[No. D043271. Fourth Dist., Div. One. Jan. 10, 2005.]

ORLANDO REYNOSO, an Incompetent Person, etc., Plaintiff and Appellant, v.
JEFFREY L. NEWMAN, Defendant and Respondent.

## Counsel

Kenneth M. Sigelman & Associates, Kenneth M. Sigelman and Penelope A. Phillips for Plaintiff and Appellant.

Higgs, Fletcher & Mack, John Morris and Susan Moriarty Hack for Defendant and Respondent.

## Opinion

**McCONNELL, P. J.**—Plaintiff Orlando Reynoso (Orlando), by and through his guardian ad litem, Alicia Reynoso, appeals a grant of summary judgment for the defendant, Jeffrey L. Newman, M.D. Orlando contends the court erred by failing to recognize a requirement under Business and Professions Code[1] sections 2395 and 2396 that a physician seeking protection of these "Good Samaritan" statutes show a subjective, good faith belief he or she is responding to a medical emergency. Orlando claims a triable issue of fact exists as to whether Dr. Newman had such a belief. Finding no such requirement we affirm the judgment.

### FACTS

Bruce Adams, a licensed dentist, performed oral surgery on Orlando at the Tri-City Surgery Center (Surgery Center), an outpatient facility. General

---

[1] All future statutory references are to the Business and Professions Code unless otherwise indicated.

anesthesia was administered because Orlando, who has been mentally retarded since birth, could not sit calmly through a dental procedure. The procedure went smoothly, but shortly after Orlando was taken to the recovery room Dr. Adams noticed his oxygen saturation levels (SAT's) were lower than normal, fluctuating between the mid-80's and 90's.

William K. Lo, M.D., the anesthesiologist, was called to monitor Orlando. At this time Orlando was spitting up blood and his SAT's continued to fluctuate irregularly. Dr. Lo recommended Orlando be transferred to a nearby hospital for treatment of possible aspiration of blood. Instead of heeding this recommendation, Dr. Adams contacted Dr. Newman,[2] an internist who had privileges at the nearest hospital, for a second opinion.

Dr. Newman arrived at the Surgery Center shortly after Dr. Adams's call. He examined Orlando and agreed with Dr. Lo that he should be transported to the hospital for further treatment.[3] Initially, there was a plan to arrange for a nonemergency ambulance transport, but when none was immediately available a nurse assisting in Orlando's care called 911. The paramedics arrived and transported Orlando to the hospital where he was admitted under Dr. Newman's care.

One year later, Orlando filed suit, alleging the parties responsible for his care, including Dr. Newman, were negligent in failing to recognize a life-threatening emergency and not moving him to the hospital sooner. Orlando contends that as a result of this negligence, he was deprived of oxygen while at the Surgery Center and suffered permanent brain damage resulting in the exacerbation of his existing mental retardation and behavioral problems.

Dr. Newman moved for summary judgment asserting immunity from liability under sections 2395 and 2396. In opposition, Orlando argued that because Dr. Newman did not, and could not, show he had a reasonable, good faith belief he was responding to an emergency, the Good Samaritan immunity afforded by sections 2395 and 2396 do not protect him. In support of this contention, Orlando pointed to the following testimony Dr. Newman gave during his deposition almost a year and a half after the incident:

"Q. [D]o you have any recollection as to whether you received the impression that it was an urgent request?

---

[2] Dr. Adams and Dr. Newman had crossed paths over the past 10 years at various nursing homes in the community where they both provided services. This was the first time Dr. Adams contacted Dr. Newman to assist him with a patient.

[3] Dr. Newman had not met Orlando before the day of the incident.

"A. I don't recall.

"Q. And you don't have any recollection of what it was you were asked to come and help with. Is that correct?

"A. I have no recollection.

"Q. Once you received that request, do you recall what you did in response?

"A. No. I have no recollection of the day, although I'm sure I tried to see if I could get out to come help him."

Orlando also relied on Dr. Adams's deposition testimony that he could not recall if he said anything to Dr. Newman during their telephone conversation to suggest an emergency existed.

The court rejected Orlando's argument and issued a tentative ruling granting the motion. After oral argument, the court entered summary judgment in favor of Dr. Newman.

## DISCUSSION

### A

*Standard of Review*

A "party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he [or she] is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493].) A defendant satisfies this burden by showing " 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' " to that cause of action. (*Ibid.*) " 'Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto.' " (*Id.* at p. 849.) But "if the showing by the defendant does not support judgment in his favor, the burden does not shift to the plaintiff and the motion must be denied without regard to the plaintiff's showing." (*Crouse v. Brobeck, Phleger & Harrison* (1998) 67 Cal.App.4th 1509,

1534 [80 Cal.Rptr.2d 94].) In determining whether these burdens have been met, we review the record de novo. (*Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1143 [97 Cal.Rptr.2d 707].)

B

*Summary Judgment Was Proper*

Section 2395 provides in pertinent part: "No licensee, who *in good faith renders emergency care* at the scene of an emergency, shall be liable for any civil damages as a result of any acts or omissions by such person in rendering the emergency care." (Italics added.) Similarly, section 2396 provides: "No licensee, *who in good faith upon the request of another person so licensed, renders emergency medical care* to a person for medical complication arising from prior care by another person so licensed, shall be liable for any civil damages as a result of any acts or omissions by such licensed person in rendering such emergency medical care." (Italics added.)

 The legislative purpose behind sections 2395 and 2396 "is to induce physicians to render medical assistance to persons in need of such care." (*Kearns v. Superior Court* (1988) 204 Cal.App.3d 1325, 1328 [252 Cal.Rptr. 4].) The provisions are " 'directed towards physicians who, by chance and on an irregular basis, . . . are called to render emergency medical care.' " (*Ibid.*) The statutory purpose is best served by "discouraging even the commencement of an action against a health care professional who has rendered emergency medical assistance." (*Ibid.*)

Orlando contends the words "good faith" as used in sections 2395 and 2396 imply a requirement that the physician hold a subjective belief he or she is *responding* to an emergency. He asserts summary judgment was improper because Dr. Newman did not establish he had such a belief when Dr. Adams requested his assistance. Orlando relies primarily on a single sentence from *Bryant v. Bakshandeh* (1991) 226 Cal.App.3d 1241, 1247 [277 Cal.Rptr. 379] (*Bryant*): "[T]he use of the word 'good faith' in the 'Good Samaritan' statutes indicates that the test of whether a physician is entitled to the protection of the statutes *can involve* the subjective belief of the responding physician." (Italics added.)

In *Bryant*, a urologist answered a "stat" call from another doctor requesting assistance with the placement of a catheter in an infant prior to performing an elective procedure. The urologist attempted to insert the catheter, but in the

process perforated the infant's rectal pouch, leading to an infection that resulted in death. The court reversed summary judgment in favor of the urologist, finding a triable issue of fact existed as to whether he was responding to a medical emergency.[4] The court explained "it is for the trier of fact to determine whether [the urologist] had a reasonable, good faith belief that he was responding to an emergency situation *when he performed the requested procedures . . . .*" (*Bryant, supra,* 226 Cal.App.3d at 1247, italics added.) *Bryant* does not suggest the Good Samaritan statutes are inapplicable when a physician unquestionably renders emergency care, but was unaware until he or she reached the patient that the situation was an emergency.

■ In *Kearns v. Superior Court, supra,* 204 Cal.App.3d 1325, 1328, the court held the "test for determination of the existence of an emergency is objective: whether the undisputed facts establish the existence of an exigency of 'so pressing a character that some kind of action must be taken.' " ■ *Kearns* also concluded that "[a]bsent a duty of professional care preexisting the emergency, the Good Samaritan law is applicable to protect a physician *who renders emergency assistance* in a hospital to the patient of another doctor. [Citation.] 'The heart of the application of the Good Samaritan statutes is the inquiry whether a duty of professional care pre-existed the emergency.' " (*Id.* at p. 1329.) The "Good Samaritan statutes . . . provide immunity for any acts or omissions of a medical volunteer who in good faith renders emergency medical assistance." (*Ibid.*)

■ Here, it is undisputed that when Dr. Newman treated Orlando an emergency existed.[5] In fact, Orlando's malpractice claims are premised on the existence of an emergency. Because there is no dispute that Dr. Newman was a volunteer who rendered Orlando emergency care, his subjective belief as to the existence of a medical emergency when Dr. Adams contacted him and while he was on the way to the Surgery Center is irrelevant.

---

[4] The court in *Bryant* noted that although the urologist had responded to a "stat" call, "the facts in this case differ markedly from the usual in-hospital emergency situation. . . . Here, although [the infant] was anesthetized, the contemplated surgical procedure had not begun, and, in fact, could not begin until [the urologist] inserted the catheter. Moreover, [the urologist] was informed the surgery was elective." (*Bryant, supra,* 226 Cal.App.3d at pp. 1246–1247.)

[5] In his opening brief, Orlando states, "For the purposes of Dr. Newman's motion for summary judgment and the present appeal, at least, all parties agree that objectively, an emergency existed."

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to Respondent.

Benke, J., and Huffman, J., concurred.