Filed 12/16/13  Garcia v. Frasier CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| ANDRES J. GARCIA, a Minor, etc., | B246267 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. TC025711) |
| v. | |
| GORDON FRASER, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lynn D. Olson, Judge.  Reversed.

Nathaniel J. Friedman, A Professional Corporation, Nathaniel J. Friedman and Barton A. Friedman for Plaintiff and Appellant.

Ryan Datomi, Richard J. Ryan, Jeffrey T. Whitney and Dawn Cushman for Defendant and Respondent.

_____

# INTRODUCTION

Plaintiff Andres J. Garcia, by his father and guardian ad litem, appeals from a judgment following an order granting a motion by defendant Dr. Gordon Fraser for summary judgment. We reverse.

# FACTUAL AND PROCEDURAL BACKGROUND

### A.    *Factual Background*

Maria Gonzalez was pregnant with Andres in 2003. Her obstetrician and gynecologist was Dr. Jorge Carreon. Early in the morning on November 19, 2003 Gonzalez arrived at St. Francis Medical Center's Family Life Center with labor contractions. Dr. Fraser was the on-call obstetrician and gynecologist for the emergency department at St. Francis Medical Center, although he was not on-call for Dr. Carreon or St. Francis Family Health Center. The nursing staff contacted Dr. Fraser because Dr. Carreon was unavailable. Dr. Fraser admitted Gonzalez and issued telephonic orders, including laboratory studies, fetal monitoring, and pain medication.

Within two hours, Gonzalez's cervix was completely dilated and she was beginning to push. Dr. Fraser, whom the nurses had called to the delivery room, used a vacuum to facilitate the delivery, because there had been an episode of heart rate deceleration. After delivery of Andres' head, Dr. Fraser noted shoulder dystocia, which meant that Andres' "shoulder became lodged under [Gonzalez's] pelvis, impeding delivery . . . ." To help relieve the shoulder dystocia, the nurses repositioned Gonzalez. Dr. Fraser then performed a corkscrew maneuver, followed by another use of the vacuum. Dr. Fraser then delivered Andres, who weighed 10 pounds, 10 ounces at birth. Andres' APGAR score was initially one but improved to nine following resuscitative measures by the neonatal team. Andres had decreased movement in the left upper shoulder area and Erb's palsy.

After birth, Andres underwent physical therapy and other conservative treatment to improve the mobility of his left arm and hand. In 2011, when Andres was seven years old, doctors at Los Angeles County/USC Medical Center performed a procedure on his left shoulder called a proximal humerus derotational osteotomy and internal fixation, which is a relatively major operation designed to realign the relationship between the arm and the shoulder.

B.     *Procedural Background*

On September 8, 2011 Andres, by his father and guardian ad litem, filed this action against St. Francis Medical Center, Dr. Carreon, Dr. Fraser, and others.[1] Andres' operative first amended complaint alleged a single cause of action for professional negligence. Andres alleged that Dr. Fraser negligently delivered Andres vaginally, rather than by cesarean section, and that his attempt to alleviate the shoulder dystocia by "'pulling' on the head" fell below the standard of care. Andres alleged that Dr. Fraser's negligence caused shoulder dystocia and Erb's palsy, which has required and will require past and future medical treatment and hospitalizations. Dr. Fraser's answer asserted several affirmative defenses, including the Good Samaritan defense pursuant to Business and Professions Code sections 2395 and 2396 and Health and Safety Code section 1799.102.

Dr. Fraser filed a motion for summary judgment or alternatively summary adjudication on two grounds. First, Dr. Fraser argued that the undisputed evidence showed that the medical care he provided to Andres conformed with the standard of care and did not cause or contribute to Andres' injuries. Second, Dr. Fraser argues that he was "entitled to statutory immunity under California law for his actions" as a Good Samaritan. Dr. Fraser submitted the declaration of Dr. D. Gene Parks as an expert witness on Dr. Fraser's compliance with the standard of care. In opposition to the

---

[1]     Only Dr. Fraser is a party to this appeal.

3

motion, Andres submitted the declaration of Dr. Albert J. Phillips, also an expert on the standard of care, to which Dr. Fraser filed objections.

The trial court granted the motion. The trial court overruled one of Dr. Fraser's objections to Dr. Phillips' declaration and sustained three others. The trial court's ruling stated in its entirety: "The declaration of Dr. Parks is sufficient to meet the moving party's burden on the issues of lack of breach and causation. Defendant's objections #2, 3 and 4 to the declaration of Dr. Phillips are sustained. Defendant's objection #1 to the declaration of Dr. Phillips is overruled. In light of the ruling on the objections, the declaration of Dr. Phillips is insufficient to create a triable issue of fact as to causation."

The trial court entered judgment on October 23, 2012. Andres timely appealed.

## DISCUSSION

A.      *Standard of Review*

We review a trial court's order granting a motion for summary judgment "de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party." (*State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1017-1018; *Purton v. Marriott Internat., Inc.* (2013) 218 Cal.App.4th 499, 504.) A defendant moving for summary judgment has the initial burden to make a prima facie showing there is no merit to a cause of action and that therefore the defendant is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (p)(2); *Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 720; *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) To satisfy this burden, the moving defendant must show that at least one of the elements of the cause of action has not been established by the plaintiff and cannot reasonably be established, or must establish the elements of a complete defense to the cause of action. (Code Civ. Proc., § 437c, subds. (*o*), (p)(2); *State of California v. Allstate Ins. Co.*, *supra*, at p. 1017; *Aguilar*, *supra*, at p. 849; *Jessen v. Mentor Corp.* (2008) 158 Cal.App.4th 1480, 1484.) If the moving defendant meets this burden, then the burden shifts to the plaintiff to show that

4

there is at least one triable issue of material fact regarding the cause of action or as to the complete defense. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, *supra*, at p. 849; *Jessen*, *supra*, at p. 1484.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, *supra*, at p. 850, fn. omitted; accord, *Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1003.)

### B.     *Breach of Duty*

The elements of a cause of action for medical malpractice are "'''"(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence.' [Citation.]"' [Citation.]" (*Avivi v. Centro Medico Urgente Medical Center* (2008) 159 Cal.App.4th 463, 468, fn. 2; *Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 122.) In a medical malpractice action, "'expert opinion testimony is required to prove or disprove that the defendant performed in accordance with the prevailing standard of care [citation], except in cases where the negligence is obvious to laymen. [Citation.]' [Citation.]" (*Garibay v. Hemmat* (2008) 161 Cal.App.4th 735, 741.) "'''California courts have incorporated the expert evidence requirement into their standard for summary judgment in medical malpractice cases. When a defendant moves for summary judgment and supports his motion with expert declarations that his conduct fell within the community standard of care, he is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence.'" [Citation.]" (*Powell*, *supra*, at p. 123.) On review of the grant of summary judgment in a medical malpractice case, we construe the declaration of plaintiff's expert liberally "and resolve any doubts as to the propriety of granting the motion in favor of the plaintiff." (*Id.* at pp. 125-126.)

5

We conclude that the trial court erred in granting Dr. Fraser's motion for summary judgment on the issue of breach of the duty of care because there were triable issues of material fact. As noted above, the trial court sustained three of Dr. Fraser's four evidentiary objections to the declaration of Dr. Phillips (although two of the four objections were to the same paragraph), and then ruled that the remainder of Dr. Phillips' declaration did not create a factual issue regarding whether Dr. Fraser's conduct was below the standard of care and caused Andres' injuries. On appeal, Andres does not challenge the trial court's evidentiary rulings with any argument, legal authority, or citation to the record. Therefore, Andres has forfeited any challenge to those rulings. (See *Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1074; *Jessen v. Mentor Corp.*, *supra*, 158 Cal.App.4th at p. 1492, fn. 14.)

The portion of Dr. Phillips' declaration that the trial court did not exclude stated, in relevant part:

"7.     I respectfully disagree with [Dr. Fraser's] stated opinion, i.e., that he complied with the standard of care.

"8.     Based on my background, training and experience, and to a reasonable degree of medical certainty, it is my opinion that, in this case, [Dr. Fraser] fell below the standard of care in his care and treatment of . . . Gonzalez and the delivery of [Andres], with said negligence being a substantial factor in the injuries suffered by [Andres].

"9.     My reasons for this opinion are as follows:

"A.     The standard of care prohibits use of the vacuum following performance of the corkscrew maneuver, in an attempt to alleviate an encountered shoulder dystocia;

"B.     By using the vacuum, performing the corkscrew maneuver, and then using the vacuum (for a second time) thereafter, Dr. Fraser fell below the standard of care."

The portion of Dr. Phillips' declaration that the trial court excluded pursuant to Dr. Fraser's objections stated: "The cause of the shoulder dystocia and resulting injuries was

6

[Dr. Fraser's] use of a vacuum, for a second time, following utilization of the corkscrew maneuver."[2]

Liberally construing the portion of Dr. Phillips' declaration that the trial court did not exclude, we conclude that Dr. Phillips' declaration created triable issues of material fact regarding whether Dr. Fraser's use of the vacuum for a second time, after he had performed the corkscrew maneuver, was below the standard of care and whether his care was a "substantial factor" in causing Andres' injuries.[3] (See *Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 189 ["[i]n light of the rule of liberal construction, a reasoned explanation required in an expert declaration filed in opposition to a summary judgment motion need not be as detailed or extensive as that required in expert testimony presented in support of a summary judgment motion"]; *Shugart v. Regents of University of California* (2011) 199 Cal.App.4th 499, 506 [although the doctor's "declaration is not a model of specificity, it is sufficient to raise a triable issue of fact as to whether [the defendant's] medical care of [the plaintiff] met the standard of care in the medical community and whether that care caused or contributed to [the plaintiff's] alleged damages"].) Dr. Fraser was not entitled to summary judgment on the ground that Andres could not establish the element of a breach of the duty of care.

---

[2]     The trial court also excluded Dr. Phillips' statement that Dr. Fraser "had a duty to comply with the standard of care, regardless of whether this was an 'emergency[]' situation, as [Dr. Fraser] has characterized it." Dr. Fraser had objected to this statement on the ground that it did not take into account the Good Samaritan statutes.

[3]     Although the trial court sustained Dr. Fraser's objection to Dr. Phillips' statement in paragraph 10 of his declaration that the second use of the vacuum caused the "shoulder dystocia and resulting injuries," Dr. Fraser did not object to Dr. Phillips' statement in paragraph 8 of his declaration that the second use of the vacuum was a "substantial factor in the injuries suffered by" Andres, which is another way of saying that the second vacuum use caused the shoulder dystocia and injuries.

C. *Good Samaritan Defense*

Dr. Fraser argues that the judgment should be affirmed under the Good Samaritan doctrine. The trial court did not address this issue and, surprisingly, neither on appeal does Andres. Nevertheless, because "any doubts as to the propriety of granting a summary judgment motion should be resolved in favor of the party opposing the motion," (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535) and because we review the trial court's judgment not its reasons or rationale (*Plotkin v. Sajahtera, Inc.* (2003) 106 Cal.App.4th 953, 959), we will consider the issue. We again conclude that Dr. Fraser failed to meet his burden on summary judgment on the Good Samaritan defense.

Dr. Fraser based his Good Samaritan defense on Business and Professions Code sections 2395 and 2396, which give immunity to physicians who render emergency care in certain situations. Business and Professions Code section 2395 "provides in pertinent part: 'No licensee, who *in good faith renders emergency care* at the scene of an emergency, shall be liable for any civil damages as a result of any acts or omissions by such person in rendering the emergency care.' (Italics added.) Similarly, section 2396 provides: 'No licensee, *who in good faith upon the request of another person so licensed, renders emergency medical care* to a person for medical complication arising from prior care by another person so licensed, shall be liable for any civil damages as a result of any acts or omissions by such licensed person in rendering such emergency medical care.' (Italics added.)" (*Reynoso v. Newman* (2005) 126 Cal.App.4th 494, 499.)[4] "The legislative purpose behind [Business and Professions Code] sections 2395 and 2396 'is to induce physicians to render medical assistance to persons in need of such care.' [Citation.] The provisions are '"directed towards physicians who, by chance and on an irregular basis, . . . are called to render emergency medical care."' [Citation.] The statutory purpose is best served by 'discouraging even the commencement of an action

---

[4] Dr. Fraser also cited Health and Safety Code section 1799.102. Section 1799.102, however, does not apply to emergency services provided in "places where medical care is usually offered," and therefore is inapplicable here.

8

against a health care professional who has rendered emergency medical assistance.' [Citation.]" (*Ibid.*)

Absent a preexisting professional relationship with the person receiving emergency care, "the Good Samaritan law is applicable to protect a physician who renders emergency assistance in a hospital to the patient of another doctor. [Citation.] 'The heart of the application of the Good Samaritan statutes is the inquiry whether a duty of professional care pre-existed the emergency.' [Citation.]" (*Kearns v. Superior Court* (1988) 204 Cal.App.3d 1325, 1329.)

When a physician renders emergency care as part of his duties and responsibilities in the medical facility, courts have not allowed the physician to claim the protection of the Good Samaritan statutes. For example, in C*olby v. Schwartz* (1978) 78 Cal.App.3d 885, two physicians who provided care in their capacity as members of the hospital's emergency surgical call panel claimed immunity based on the Good Samaritan statutes originally enacted as Health and Safety Code sections 2144 and 2144.5, the predecessors of sections 2395 and 2396. (*Colby*, *supra*, at p. 888.) The court noted that the physicians stated in their declarations that "they operated upon the decedent as part of their normal course of practice as members of the hospital emergency [surgical] call panel," and held that in this capacity they "did not render the type of physician care which constitutes 'emergency [medical] care' as it is used in those sections." (*Id.* at p. 891.) The court explained that the legislative purpose of the Good Samaritan statutes was "to induce physicians to render medical aid to individuals who, though in need of such care, were not receiving it . . . by denying the patient a right of action and thereby discouraging even the commencement of suit." (*Ibid.*) The statutes "were directed towards physicians who, by chance and on an irregular basis, come upon or are called to render emergency medical care," often under circumstances where "the medical needs of the individual would not be matched by the expertise of the physician and facilities could be severely limited." (*Id.* at p. 892.) Physicians on emergency surgical call for a hospital, "who treat patients requiring immediate medical care as part of their normal course of practice do not need the added inducement that immunity from civil liability would provide." (*Ibid.*)

9

Such physicians are "practicing within their area of expertise and with all of the benefits of full hospital facilities." (*Ibid.*)

In contrast, where providing emergency care to patients is not part of the physician's regular hospital duties and responsibilities, courts have ruled the Good Samaritan immunity applies. For example, in *Kearns v. Superior Court*, *supra*, 204 Cal.App.3d 1325, "unexpected complications during surgery produce[d] a pressing necessity requiring immediate intraoperative assistance during a crucial stage of the operation . . . ." (*Id.* at p. 1328.) A physician who "merely happened to be in the hospital treating his own patients and had no duty of professional care to plaintiff preexisting the request for intraoperative assistance" responded to the emergency. (*Id.* at p. 1329.) The court held that the physician was entitled to immunity under the Good Samaritan statutes. (*Ibid.*)

In *Burciaga v. St. John's Hospital* (1986) 187 Cal.App.3d 710 a pediatrician was visiting his patients in the hospital and responded to a "stat" request for assistance by an obstetrician delivering an infant in the delivery room. (*Id.* at p. 713.) The court held that the pediatrician was entitled to summary judgment under the Good Samaritan statutes because there were "reasonable, uncontradicted inferences that [the pediatrician] owed no duty of emergency care to [the] plaintiff." (*Ibid.*)

And in *McKenna v. Cedars of Lebanon Hospital* (1979) 93 Cal.App.3d 282, a nurse paged the chief resident and took him to a room where the patient was having a seizure. (*Id.* at p. 284.) The patient died of cardiac arrest shortly after the resident administered medication to stop the seizure. (*Id.* at pp. 284-285.) The court held that the trial court properly instructed the jury on the Good Samaritan statute, explaining that the physician was on duty as a chief resident, and "was, in essence, a medical volunteer, called to the scene of an emergency" while treating another patient on another floor of the hospital. (*Id.* at p. 286.) The court stated that there was "no showing [the physician] had a legal duty to render emergency treatment arising from his contract of employment with Cedars. In such a situation, the legislative intent of encouraging emergency medical care by doctors who have no legal duty to treat a patient is carried out by applying Business

10

and Professions Code section 2144 to [the physician]." (*Ibid.*) Reviewing the case law, the court in *Bryant v. Bakshandeh* (1991) 226 Cal.App.3d 1241 stated, "[a] physician who renders emergency aid in a hospital is afforded the immunity of the 'Good Samaritan' statutes 'unless a specific factual situation (such as that in *Colby v. Schwartz, supra,* [78 Cal.App.3d 855]) is not within the ambit of the legislative intent' (*McKenna*[, *supra,* at p.] 287 . . .]) 'of encouraging emergency medical care by doctors who have no legal duty to treat a patient.' [Citations.]" (*Id.* at p. 1246.)

Here, Dr. Fraser testified that his role was to take care of a patient in labor if the patient's physician of record was unavailable and a nurse from the delivery room called for assistance. He also testified that "[a]t St. Francis Hospital, 24/7, there's a physician on call for the hospital. His responsibility is to take care of any patients in labor, when the physician of record is not available." In response to counsel for Andres' question, "So . . . you knew this was going to be your role in this case, because that's the hospital policy with regard to a patient who is in labor, such as Andres Garcia's mother, at that time," Dr. Fraser responded, "If the physician of record is not available." Similarly, Dr. Fraser stated in his declaration that although he had never seen Gonzalez and "had no preexisting agreement or arrangement with Dr. Carreon to see Ms. Gonzalez in connection with her pregnancy," during "the early morning hours of November 19, 2003, I served as an on-call OB/GYN for the emergency department at St. Francis Medical Center." In other words, it was part of Dr. Fraser's job to treat and provide emergency medical care to patients in labor, like Gonzalez, whose treating physicians were not there.

In light of this evidence, whether Dr. Fraser was a medical volunteer with no pre-existing duty of medical care, or was providing emergency medical care as part of his normal duties and course of practice as an on-call physician, cannot be resolved on summary judgment on this record. At a minimum, there are contradictory inferences regarding the existence of a preexisting duty to the patient, which create a triable issue of material fact regarding whether the Good Samaritan defense applies. (See *Calemine v. Samuelson* (2009) 171 Cal.App.4th 153, 161 [reviewing court "'seeks to find contradictions in the evidence, or inferences reasonably deducible from the evidence,

11

which raise a triable issue of material fact'"]; *AmerUS Life Ins. Co. v. Bank of America, N.A.* (2006) 143 Cal.App.4th 631, 638 ["""[s]ummary judgment shall not be granted . . . based on inferences reasonably deducible from the evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact""'"].)

Dr. Fraser asserts that he was a member of the "on call" emergency care panel for St. Francis Medical Center but not for St. Francis Family Life Center. The relationship between St. Francis Medical Center and St. Frances Family Life Center, however, is not clear from the record, and Dr. Fraser did not submit any evidence on this issue. Dr. Fraser described his role as an emergency department physician as if it included both facilities (to the extent they are separate facilities). Dr. Fraser testified that he was on call to provide medical services to patients in labor, without limiting his testimony to patients in labor in St. Francis Medical Center as opposed to St. Francis Family Life Center. There is no evidence that there were any patients in labor at St. Francis Medical Center or that there were any physicians on call at St. Francis Family Life Center who were not on call at St. Francis Medical Center. In his brief on appeal, Dr. Fraser states that he provided medical care to Gonzalez "at the Family Life Center at St. Francis Medical Center," and became involved in her care because he "was providing on-call OB/GYN coverage for the emergency department at the hospital." Dr. Fraser never stated that his on-call duties and responsibilities did not extend to St. Francis Family Life Center. To the contrary, when there was an emergency with Gonzalez's delivery at St. Francis Family Life Center, the nurses called the on-call obstetrician and gynecologist at St. Francis Medical Center. Gonzalez's medical records, including the admission record and the delivery summary listing Dr. Fraser as the "Delivery Doctor," state "St. Francis Medical Center-Family Life Center." Even Dr. Fraser's expert Dr. Park confused or conflated the two, stating in his declaration that Gonzalez "presented to St. Francis Medical Center," where Dr. Fraser "was serving as the on-call OB/GYN for the emergency department."

Dr. Fraser was not entitled to summary judgment on his Good Samaritan defense.

D.    *Request to Disqualify the Trial Judge*

Andres also requests that we disqualify the trial judge from all further proceedings on remand in this case pursuant to Code of Civil Procedure section 170.1, subdivision (c), which provides that "[a]t the request of a party or on its own motion an appellate court shall consider whether in the interests of justice it should direct that further proceedings be heard before a trial judge other than the judge whose judgment or order was reviewed by the appellate court."  Counsel for Andres complains that the trial judge "wanted to 'deep six' this case.  In a word, no reasonably competent Superior Court judge would have concluded, as shown, that, given the counter-declaration of Dr. Phillips, any ruling other than motion denied, was proper herein."

An appellate court's "power to direct that a different judge hear the matter on remand should 'used sparingly and only where the interests of justice require it.' [Citation.]" (*In re Marriage of Walker* (2012) 203 Cal.App.4th 137, 153.)  "[T]he mere fact a judicial officer rules against a party does not show bias." (*In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1328.)  Andres has not shown that the interests of justice require disqualification of the trial judge in this case, and we deny his request.  (See *Barboza v. West Coast Digital GSM, Inc.* (2009) 179 Cal.App.4th 540, 547.)

13

## DISPOSITION

The judgment is reversed.  Andres is to recover his costs on appeal.

SEGAL, J.[*]

We concur:

WOODS, Acting P. J.

ZELON, J.

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.