Filed 11/18/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MARK VALDEZ,<br><br>　　　Plaintiff and Appellant,<br><br>　　v.<br><br>COSTCO WHOLESALE CORPORATION et al.,<br><br>　　　Defendants and<br>　　　Respondents. | B315309<br><br>(Los Angeles County<br>Super. Ct. No.<br>19STCV14029) |

　　　APPEAL from a judgment of the Superior Court of Los Angeles County.  Daniel M. Crowley, Judge.  Affirmed.

　　　Blair & Ramirez, Oscar Ramirez, Matthew P. Blair and Kirill Lavinski for Plaintiff and Appellant.

　　　Yukevich Cavanaugh, James J. Yukevich, Nina J. Kim and David A. Turner for Defendants and Respondents.

　　　————————————————

Plaintiff Mark Valdez (Valdez) and another man engaged in a fistfight at a gas station owned by defendant Costco Wholesale Corporation (Costco). Defendant Daniel Terrones (Terrones), a Costco gas station attendant, stopped the fight by physically separating the two men. Valdez later sued for negligence and related causes of action, alleging he was injured when Terrones pulled him away from the other man. Costco and Terrones each moved for summary judgment. The trial court granted defendants' motions.[1] Valdez appealed. His primary contention is the court erroneously concluded the Good Samaritan law of Health and Safety Code[2] section 1799.102, subdivision (b) shielded Terrones from liability.[3] We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Facts

Valdez and Joseph Lizarraga (Lizarraga), a neighbor, had an ongoing feud. On the afternoon of January 19, 2018, Valdez

---

[1] Where appropriate, Costco and Terrones are referred to collectively as defendants rather than individually by name.

[2] Undesignated statutory references are to the Health and Safety Code.

[3] At the hearing on Costco's summary judgment motion, Valdez's counsel declined to address the points raised in the motion, instead requesting the trial court to reconsider its prior summary judgment in favor of Terrones. The court declined to do so. Valdez has therefore forfeited any challenges he could have made to Costco's summary judgment that are not issues in this appeal from Terrones's summary judgment. (See *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 698–704; *NBCUniversal Media, LLC v. Superior Court* (2014) 225 Cal.App.4th 1222, 1236–1237.)

was in his car at a Costco gas station.  Lizarraga approached on foot, opened the car door, and began punching Valdez.  Terrones was on duty that day in his Costco uniform.  Other drivers alerted him to the fight.  Terrones yelled at the combatants to stop; they ignored him.  Terrones radioed his Costco supervisors for help and ran over to Valdez and Lizarraga.  Another gas station attendant phoned the police.  By this time, Valdez was out of his car.  He and Lizarraga were still struggling with each other.  Terrones again demanded the men stop fighting and said the police were on their way.  Valdez refused to comply.

Fearing Valdez and Lizarraga would hurt each other further, Terrones decided to intervene to stop the fight.  He attempted to separate the two men.  Valdez maintained his hold on Lizarraga and tried to punch him.  Terrones managed to move Valdez away from Lizarraga, ending the fight.  Lizarraga then fled in his car, and Valdez drove off after him.

Valdez's account of the incident differed.  According to Valdez, by the time Terrones came over, Valdez had placed Lizarraga in a headlock, thereby preventing him from continuing the fight.  Valdez was no longer doing anything to Lizarraga except restraining him.  Valdez also stated he was still grappling with Lizarraga when Terrones intervened.  Valdez told Terrones that he would not release Lizarraga until the police arrived.  In response, Terrones attempted to pry the men apart by pulling on Valdez's shoulder.  Terrones ignored Valdez's requests to let go.  As Terrones increased his pressure on Valdez's shoulder, Valdez "felt and heard a pop" in his "chest/shoulder area" and his "arm gave out."  Lizarraga was able to escape and drive away.  Valdez drove after him.  Valdez claimed Terrones's actions aggravated a preexisting shoulder injury.

3

## II.    Procedural Background

Valdez sued defendants for negligence, premises liability, negligent hiring, retention, and supervision, and assault and battery.[4]  Valdez claimed Costco breached its duty of care to protect him from third party (Lizarraga's) assaults on its property and Costco's employee, Terrones, intentionally caused Valdez harm by "prying" him away from Lizarraga.

Costco and Terrones separately filed summary judgment motions.  Valdez opposed the motions.

 The trial court held separate hearings on the two motions. The court granted Terrones's motion, concluding he was immune from liability under section 1799.102, subdivision (b).  The court also granted Costco's summary judgment motion on the ground Valdez failed to show there was a triable issue that the fistfight was foreseeable.

The trial court entered judgment for Terrones and Costco. Valdez timely appealed.

---

[4] Lizarraga was also named as a defendant but was never served in the action.

4

## DISCUSSION

## I.   Standard of Review on Summary Judgment

Summary judgment is appropriate if there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)  A defendant moving for summary judgment has the initial burden of presenting evidence that a cause of action lacks merit because the plaintiff cannot establish an element of the cause of action or there is a complete defense. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853.)  If the defendant satisfies this initial burden, the burden shifts to the plaintiff to present evidence demonstrating there is a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 850.)  We must liberally construe the opposing party's evidence and resolve any doubts about the evidence in favor of that party.  (*Regents of University of California v. Superior Court*, *supra*, 4 Cal.5th at p. 618.)  " ' "We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained." ' "  (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347.)

Whether summary judgment was proper here primarily turns on statutory interpretation.  Valdez's main contention on appeal is Terrones was not a Good Samaritan within the meaning of section 1799.102, subdivision (b) and related statutes as a matter of law when he intervened in the fistfight.  The interpretation and application of a statute to an established set of

5

facts are considered questions of law to be reviewed de novo. (*Weatherford v. City of San Rafael* (2017) 2 Cal.5th 1241, 1247.)

## II.     The Good Samaritan Law of Section 1799.102, Subdivision (b) and Related Statutes

Generally, the common law rule is there is no duty to rescue another from harm. (*Williams v. State of California* (1983) 34 Cal.3d 18, 23.) Nonetheless, even when there is no duty to rescue, if a person decides to render aid as a Good Samaritan, he or she will be under a duty to exercise reasonable care. (*Ibid*.) However, the California codes contain a number of immunity statutes for Good Samaritans rendering certain types of aid in emergency situations. Among those statutes is Health and Safety Code section 1799.102. It is found in division 2.5 of the Health and Safety Code, entitled, "Emergency Medical Services," and was enacted as part of the "Emergency Medical Services System and the Prehospital Emergency Medical Care Personnel Act." (§ 1797 et seq.)

Originally, section 1799.102 provided a single, generalized immunity for all persons volunteering aid at the scene of an emergency.[5] In 2008, the California Supreme Court interpreted this immunity statute as applying solely to persons rendering medical aid at the scene of a medical emergency. (See *Van Horn v. Watson* (2008) 45 Cal.4th 322, 331.) The Legislature quickly

---

[5] Section 1799.102, as originally enacted reads: "No person who in good faith, and not for compensation, renders emergency care at the scene of an emergency shall be liable for any civil damages resulting from any act or omission." However, the "scene of an emergency," for purposes of this provision, "shall not include emergency departments and other places where medical care is usually offered."

6

responded with the 2009 amendment that superseded the Court's holding. (See *Verdugo v. Target Corp.* (2014) 59 Cal.4th 312, 327.) As amended in 2009, subdivision (b)(2) of section 1799.102 reads: "Except for those persons specified in subdivision (a), [medical, law enforcement, and emergency personnel] no person who in good faith, and not for compensation, renders emergency medical or nonmedical care or assistance at the scene of an emergency shall be liable for civil damages resulting from any act or omission other than an act or omission constituting gross negligence or willful or wanton misconduct. The scene of an emergency shall not include emergency departments and other places where medical care is usually offered."

The purpose embodied in the amendment is "to encourage other individuals to volunteer, without compensation, to assist others in need during an emergency, while ensuring that those volunteers who provide care or assistance act responsibly." (§ 1799.102, subd. (b)(1).)

The statutory scheme that contains section 1799.102, the "Emergency Medical Services" division, includes definitions of various terms. At issue here is section 1797.70, which defines the term "emergency" as "a condition or situation in which an individual has a need for immediate medical attention, or where the potential for such need is perceived by emergency medical personnel or a public safety agency."

## III.   Statutory Interpretation of Section 1797.70

"Statutory construction begins with the plain, commonsense meaning of the words in the statute, ' "because it is generally the most reliable indicator of legislative intent and purpose." ' [Citation.] 'When the language of a statute is clear, we need go no further.' " (*People v. Manzo* (2012) 53 Cal.4th 880,

7

885.) Where the language of the statute is potentially ambiguous, " '[i]t is appropriate to consider evidence of the intent of the enacting body in addition to the words of the measure, and to examine the history and background of the provision, in an attempt to ascertain the most reasonable interpretation.' " (*Id.* at p. 886.)

The parties do not dispute the language of section 1797.70 is clear. They disagree, however, on whether it is to be construed as the definition of "emergency" to be used in this case.

## A. Defendants' View of Section 1797.70

Defendants contend section 1797.70's definition of "emergency" should not be used in this case. They reason a different definition should be applied pursuant to section 1797.50, which is also contained in the "Emergency Medical Services" division. Section 1797.50 reads: "Unless the context otherwise requires, the definitions contained in this chapter shall govern the provisions of this division." Defendants interpret the clause "unless the context otherwise requires" as the Legislature's express acknowledgment that certain factual situations do not fall within the literal language of section 1797.70. According to defendants, in such factual contexts or "circumstances," as they appear here, an alternative definition of "emergency" should be used to determine whether rendering aid is appropriate. Defendants point to *Bryant v. Bakshandeh* (1991) 226 Cal.App.3d 1241, in which a physician claimed he was exempt from liability for a patient's death under Good Samaritan laws (Bus. & Prof. Code, §§ 2395, 2396), because in providing medical care to the patient he was responding to a medical emergency. (*Bryant,* at pp. 1244, 1247.) As part of its holding the appellate court defined " 'emergency' " under the Good

8

Samaritan statutes as " 'the existence of an exigency of "so pressing a character that some kind of action must be taken." ' " (*Id.* at p. 1247; see also *Breazeal v. Henry Mayo Newhall Memorial Hospital* (1991) 234 Cal.App.3d 1329, 1338 [interpreting Bus. & Prof. Code, §§ 2395, 2396]; *Reynoso v. Newman* (2005) 126 Cal.App.4th 494, 499–500 [same].) Defendants urge this more expansive definition of "emergency" is properly used in the factual context of a fistfight and brings Terrones within the purview of section 1799.102, subdivision (b).

Defendants' argument is flawed in two respects. First, they misinterpret the meaning of "context" in section 1797.50's clause, "unless the context otherwise requires," as referring to the factual context or circumstances presented by a case. However, courts have generally construed the word "context" in that statutory clause as meaning the use of a particular defined term within the statute's substantive provisions. The pertinent "context" then is the language of the statute, not the underlying facts. (See, e.g., *Diamond View v. Herz* (1986) 180 Cal.App.3d 612, 617, fn. 4; *Hayes v. Commission on State Mandates* (1992) 11 Cal.App.4th 1564, 1595; *Kizer v. Hillhaven, Inc.* (1993) 19 Cal.App.4th 309, 317; *Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1249–1250; *MCI Communications Services Inc. v. California Dept. of Tax & Fee Administration* (2018) 28 Cal.App.5th 635, 647; *Rowland v. California Men's Colony* (1993) 506 U.S. 194, 199–200 [113 S.Ct. 716, 121 L.Ed.2d 656].)

Moreover, defendants' view that section 1797.50's clause enables courts and litigants to look to any definition of "emergency" based on the factual context means section 1797.70's definition is entirely open-ended. As a result, the definition could be displaced whenever the "context requires," rendering it

9

meaningless. Section 1797.70 would never be binding because every case arises in a different factual "context" and every party would argue that a different definition of "emergency" is therefore required.

Additionally, section 1797.70's definition of "emergency" is a threshold gateway for limiting the general, default rules of liability for negligence, and courts generally shy away from interpreting statutes in a way that construes immunities more broadly than the Legislature specifies. (E.g., *Emery v. Emery* (1955) 45 Cal.2d 421, 430 ["Exceptions to the general principle of liability . . . are not to be lightly created"]; *Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 183 [same].)

## B. Valdez's View of Section 1797.70

As discussed, section 1797.70 defines the term "emergency" as "a condition or situation in which an individual has a need for immediate medical attention, or where the potential for such need is perceived by emergency medical personnel or a public safety agency." Valdez contends section 1797.70's definition of "emergency" should be used, but it does not reach the facts of this case. Valdez reasons the fistfight does not qualify as an "emergency" because there was no evidence either he or Lizarraga had " 'a need for immediate medical attention' " when Terrones intervened. Consequently, Valdez argues, section 1799.102, subdivision (b) does not apply to shield Terrones from liability.

Although we agree that section 1797.70's definition of emergency is to be used here, we also conclude it applies to the fistfight, such that Terrones was immune from liability as a Good Samaritan.

10

The undisputed facts showed Valdez and Lizarraga had a history of mutual hostility, which erupted into violence when Lizarraga suddenly attacked Valdez and a fistfight ensued. The men ignored Terrones's repeated demands to stop. Based on Valdez's account, punches were thrown; he acknowledged Lizarraga struck him in the head several times. Valdez gained the upper hand by placing Lizarraga in a headlock and refusing to release him. The fight did not end until Terrones separated the two men.

The existence of an emergency is tested objectively. (*Bryant v. Bakshandeh, supra,* 226 Cal.App.3d at p. 1247.) When Terrones saw the fistfight, it was reasonable for him to believe he had to stop it because one or both combatants "had a need for immediate medical attention." First, common knowledge dictates the use of hands or fists can cause great bodily injury (see *People v. Aguilar* (1997) 16 Cal.4th 1023, 1037–1038), and a closed-fist punch to the head can cause head and neck trauma, loss of consciousness, and even death (see, e.g., *People v. McDaniel* (2008) 159 Cal.App.4th 736, 749 [facial abrasions, contusions, and scratches, bloody nose, and neck lacerations]; *In re Nirran W.* (1989) 207 Cal.App.3d 1157, 1159 [dizziness and dislocated jaw]; *People v. Kinman* (1955) 134 Cal.App.2d 419, 421–422 [black eyes, loose teeth, lacerations, and bruising]; *People v. Zankich* (1961) 189 Cal.App.2d 54, 58–59 [unconsciousness and death].)

Second, Valdez placed Lizarraga in a headlock, tightening his grip in response to Terrones attempts to separate him from Lizarraga. Again, based on common knowledge, headlocks can, at the very least, cause pain and injuries to the neck, shoulders, and back. A headlock or a choke hold can also cut off oxygen

11

leading to a loss of consciousness or even death.  (See *Unzueta v. Steele* (2003) 291 F.Supp.2d 1230, 1239; *Zellars v. State* (1998) 707 So.2d 345, 347–348 (conc. opn. of Cobb, J.) ["It is an obvious fact that death <u>can</u> result from choking; that could be judicially noted without any medical testimony at all"]; *State v. McArthur* (2006) 899 A.2d 691, 700 ["We agree with the state that, in its entirety, the evidence established that, in holding her in a headlock, [the defendant] not only intended to cause [the victim] to suffer serious physical injury but did in fact cause her to die"].)  As Justice Thurgood Marshall cautioned:  "Depending on the position of the [individual's] arm and the force applied, the victim's voluntary or involuntary reaction, and his state of health, [the individual] may inadvertently crush the victim's larynx, trachea, or hyoid.  The result may be death caused by either cardiac arrest or asphyxiation."  (*City of Los Angeles v. Lyons* (1983) 461 U.S. 95, 116–117 [103 S.Ct. 1660, 75 L.Ed.2d 675] (dis. opn. of Marshall, J.).)

The undisputed facts established the fistfight at the gas station constituted an emergency as defined by section 1797.70.  But for Terrones's intervention, the fight would have continued.  Therefore, by intervening to end the fight, Terrones was rendering emergency nonmedical assistance while at the scene of an emergency under section 1799.102, subdivision (b).

### C.    Terrones Acted In Good Faith

Terrones presented evidence he intervened in the fistfight to stop the combatants, restore peace, and prevent further harm.  Indeed, as the trial court found, Terrones's decision to move the combatants apart was not only objectively reasonable but subjectively done in good faith under section 1799.102, subdivision (b).

12

On appeal, Valdez grasps at straws. He merely contends the question of good faith is one "only the trier of fact can determine."

In sum, the trial court did not err in concluding there was no triable issue of fact that Terrones was shielded from liability as a Good Samaritan.

## IV. Valdez's Remaining Contentions Concerning Terrones's Summary Judgment

Having reviewed Valdez's remaining challenges to Terrones's summary judgment, we dispose of them as follows.

Valdez argues there are triable issues that Terrones committed battery on the theory that he acted "with a willful disregard for Valdez rights" in breaking up the fight when Valdez was making a citizen's arrest of Lizarraga. Because this is a new theory, which Valdez has asserted for the first time on appeal, we refuse to consider it. (*Expansion Pointe Properties Limited Partnership v. Procopio, Cory, Hargreaves & Savitch, LLP* (2007) 152 Cal.App.4th 42, 54–55 [theories not fully developed or presented to the trial court cannot create a triable issue on appeal]; *Delfino v. Agilent Technologies, Inc.* (2006) 145 Cal.App.4th 790, 818, fn. 36 [appellate courts will generally decline to consider "newly minted" theories on appeal].)

Valdez contends the trial court improperly overruled a series of objections he made to evidence proffered by defendants in support of their summary judgment motions. However, in overruling the objections, the court expressly stated it "does not rely on the underlying evidence objected to." There are no evidentiary rulings for us to review.

13

**DISPOSITION**

The judgment is affirmed.  The parties are to bear their own costs on appeal.

CERTIFIED FOR PUBLICATION.


LUI, P. J.


We concur:



CHAVEZ, J.



HOFFSTADT, J.

14