[No. B164750. Second Dist., Div. Seven. Mar. 9, 2004.]

DEAN LONG, JR. et al., Plaintiffs and Appellants, v.
THE WALT DISNEY COMPANY et al., Defendants and Respondents.

## COUNSEL

Johnson & Rishwain, Neville L. Johnson, Brian A. Rishwain, James T. Ryan; and Rodney A. Smolla for Plaintiffs and Appellants.

Quinn Emanuel Urquhart Oliver & Hedges, John B. Quinn, James D. Webster and J. D. Horton for Defendants and Respondents.

## OPINION

ZELON, J.—Plaintiffs sued over the use of their computer-altered childhood likenesses in nationally broadcast children's television programming more than two years after all broadcasts had ceased. On appeal, they contend that the trial court erred in ruling that their claims were subject to the Uniform Single Publication Act (USPA) (Civ. Code, § 3425.1 et seq.) and were therefore barred by the statutes of limitations (Code Civ. Proc., §§ 339, 340). We hold that the USPA governs plaintiffs' claims and that plaintiffs may not avoid the statutes of limitations through the discovery rule or theories of fraudulent concealment and accrual.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 18, 2002, plaintiffs filed a tort action seeking damages arising from network broadcasts and internet use of their likenesses between September 1997 and May 1999. Plaintiffs' sixth-grade yearbook photographs had been "morphed"—altered by computer—into characters that were incorporated as fictional, cartoon-like characters in a series of vignettes broadcast in Saturday morning children's programming on ABC television. In addition to the broadcasts, retail products and other internet tie-ins were created, but all use of the images had been discontinued by January 17, 2000.

Plaintiffs alleged that their likenesses "were used for the purpose of cruelly ridiculing, humiliating and defaming them. . . . The show was a carefully crafted, unconcealed attempt to dredge up and mock the childhood frailties of all of the people involved." They claimed injury both from the use of their physical likenesses and from the nature of the characters developed from their images.

The trial court granted defendants' motion for summary adjudication on the ground that plaintiffs' causes of action for the violation of the right of publicity, appropriation of likenesses, and intentional infliction of emotional distress were time-barred. Plaintiffs obtained a dismissal with prejudice of their remaining causes of action, then appealed.

After briefing was complete, the Supreme Court issued its decision in *Shively v. Bozanich*, (2003) 31 Cal.4th 1230, [7 Cal.Rptr.3d 576, 80 P.3d 676]. The parties submitted letter briefs, at our request, addressing that decision.

## DISCUSSION

### 1. *Standard of Review*

On appeal from a summary judgment, we make "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law. [Citations.]" (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222 [38 Cal.Rptr.2d 35].) In our review, we strictly construe the moving party's evidence and liberally construe the opposing party's, accepting as undisputed only those portions of the moving party's evidence that are uncontradicted. "Only when the inferences are indisputable may the court decide the issues as a matter of law. If the evidence is in conflict, the factual issues must be resolved by trial. 'Any doubts about the propriety of summary judgment . . . are generally resolved *against* granting the motion, because that allows the future development of the case and avoids errors.' [Citation.]" (*Binder v. Aetna Life Ins. Co.* (1999) 75 Cal.App.4th 832, 839 [89 Cal.Rptr.2d 540].)

The trial court properly found no triable issues of material fact; none of the parties assert that such issues exist. The questions before this court are questions of law.

### 2. *The Uniform Single Publication Act*

■ Both in language and intent, the USPA is a broad enactment, applying to "libel or slander or invasion of privacy or any other tort founded upon any single publication or exhibition or utterance." (Civ. Code, § 3425.3.) In light of the significant First Amendment issues implicated by such claims, courts in California and other jurisdictions have interpreted the uniform act expansively. " 'This rule was adopted in recognition of the vast multiplicity of suits which could arise from mass publications which transcend a variety of medias and state lines, and the attendant problems of choice of law, indefinite liability, and endless tolling of the statute of limitations. . . .' " (*Strick v. Superior Court* (1983) 143 Cal.App.3d 916, 924 [192 Cal.Rptr. 314] (*Strick*).)

The Supreme Court recently addressed the scope and impact of the rule in *Shively*. There plaintiff sued over statements about her, later published in a book. She asserted that her defamation claims did not accrue and the statute of limitations did not begin to run until she knew, or reasonably should have known, the factual basis for her claim; that is, after she purchased and read the book. The question before the court was "whether the discovery rule may be employed to delay the accrual of a cause of action for defamation *beyond* the

point at which the defamation is no longer secret but was made public in a book." (*Shively v. Bozanich, supra,* 31 Cal.4th at p. 1237.) The Court, examining the history and rationale of both the single publication rule and the discovery rule, concluded it could not.

The Supreme Court directly addressed the effect of the single publication rule on the accrual of claims and the tolling of the relevant statutes of limitations. "Under the single-publication rule, with respect to the statute of limitations, publication generally is said to occur on the 'first general distribution of the publication to the public.' [Citations. ] . . . Under this rule, the cause of action accrues and the period of limitations commences, *regardless* of when the plaintiff secured a copy or became aware of the publication. [Citations.]" (*Shively v. Bozanich, supra,* 31 Cal.4th at pp. 1245–1246.) While the Court acknowledged that the discovery rule has been applied in other types of defamation actions, the court rejected its application to a mass publication case on the grounds that the rule is only applied when the defamatory statement is hidden (*id.* at p. 1249), " 'inherently undiscoverable,' " or " 'inherently unknowable.' " (*Id.* at p. 1250.) The Court noted that "courts uniformly have *rejected* the application of the discovery rule to libels published in books, magazines, and newspapers, pointing out that application of the discovery rule would undermine the protection provided by the single-publication rule. (*Ibid.*)

Nor does an argument in equity mandate application of the discovery rule: "the equitable basis for applying the discovery rule—that a plaintiff should not forfeit a cause of action based on a confidential communication that he or she had no reasonable basis for discovering—no longer exists once the original defamatory statement is published in a book that was distributed to the general public. In such circumstances, not only is the basis for the claim not hidden, but it has been trumpeted." (*Shively v. Bozanich, supra,* 31 Cal.4th at p. 1253.) The Court continued, "We can see no justification for applying the discovery rule to delay the accrual of plaintiff's causes of action beyond the point at which their factual basis became accessible to plaintiff to the same degree as it was accessible to every other member of the public." (*Ibid.*)

### 3. *Plaintiffs' Claims Are Covered by the Act*

Plaintiffs argue that their claims for violation of the right of publicity, the appropriation of likenesses, and intentional infliction of emotional distress fall outside the act's scope because they depend on emotional distress and are based on legally novel underlying acts. In essence, plaintiffs claim that the complained-of acts are not like defamation at all, but constitute a new "morph-tort" that has caused them emotional distress rather than loss of

reputation. This distinction has already been considered and rejected. (See *Grimes v. Carter* (1966) 241 Cal.App.2d 694, 699–701 [50 Cal.Rptr. 808] [plaintiff cannot evade procedural requirements of defamation actions by alleging that the claim is not for loss of reputation but for humiliation and emotional distress].)

"Where the complaint is based on an offensive statement that is defamatory, plaintiffs have not been allowed to circumvent the statutory limitation by proceeding on a theory other than defamation." (*Fellows v. National Enquirer, Inc.* (1986) 42 Cal.3d 234, 240 [228 Cal.Rptr. 215, 721 P.2d 97].) California courts have held that the USPA's phrase "any tort" means exactly that. "The enactment of section 3425.3 of the Uniform Single Publication Act by the California Legislature reflected great deference to the First Amendment and sought to alleviate many problems presented in respect to tort actions where mass communications are involved. When the Legislature inserted the clause '*or any other tort*' it is presumed to have meant exactly what it said." (*Strick, supra*, 143 Cal.App.3d at p. 924 [applying USPA to determine when the statute of limitations accrues for causes of action for libel, fraud, and deceit based on the publication of a magazine article]; see also *McGuiness v. Motor Trend Magazine* (1982) 129 Cal.App.3d 59, 63 [180 Cal.Rptr. 784] (*McGuiness*) [applying act to cause of action for negligence]; *Baugh v. CBS, Inc.* (N.D.Cal. 1993) 828 F.Supp. 745, 756 (*Baugh*) [applying act to claims for seclusion, trespass, unfair competition, fraud, and intentional and negligent infliction of emotional distress].)

█ Plaintiffs do not, and cannot, dispute that each of the claims before the court sounds in tort and arises from the broadcasts and related Internet activity.[1] Nor can they evade their allegations that their injuries arose from attempts to humiliate, ridicule and defame them. As a result, plaintiffs' claims—however styled—are governed by the USPA. (*Belli v. Roberts Brothers Furs* (1966) 240 Cal.App.2d 284, 289–290 [49 Cal.Rptr. 625] [USPA applies to invasion of privacy claim]; accord, *Johnson v. Harcourt, Brace, Jovanovich, Inc.* (1974) 43 Cal.App.3d 880, 895–896 & fn. 14 [118 Cal.Rptr. 370] (*Johnson*); *Fleury v. Harper & Row, Publishers, Inc.* (9th Cir. 1983) 698 F.2d 1022, 1026–1027, overruled on other grounds in *In re McLinn* (9th Cir. 1984) 739 F.2d 1395, 1397; *Baugh, supra*, 828 F.Supp. at p. 756 & fn. 5; see also *Reader's Digest Assn. v. Superior Court* (1984) 37 Cal.3d 244, 265 [208 Cal.Rptr. 137] [publication's constitutional protection against libel suits extends to causes of action pleaded as intentional infliction of emotional distress and invasion of privacy].)

---

[1] Plaintiffs conceded below that their claim for violation of the right of publicity was precluded by the USPA if the court rejected their arguments with respect to discovery, concealment, and accrual of their claims.

The policy at issue is clear. The USPA was intended to protect defamation-like claims, implicating First Amendment values and arising from mass communications, from ungovernable piecemeal liability and potentially endless tolling of the statute of limitations. The claims asserted here fall squarely within the language and intent of the act.

### 4. Plaintiffs' Claims Are Time-Barred

The relevant statutes of limitation are set forth in Code of Civil Procedure sections 339 and 340, and the longest statutory period applicable to plaintiffs' action is two years. Plaintiffs assert that because their likenesses were used in children's programming rather than in general broadcasts, and because the images were technologically altered, the statutes should not begin to run until they actually discovered the use of their likenesses. Plaintiffs also attempt to avoid the statutes of limitations by arguing that the alteration of their images constituted fraudulent concealment and that their causes of action did not accrue until they suffered emotional distress upon learning of the use of their likenesses.

As *Shively* held, the discovery rule, which "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action" (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397 [87 Cal.Rptr.2d 453, 981 P.2d 79]), does not apply when the allegedly defamatory material is included in a mass media publication. (See *McGuiness, supra,* 129 Cal.App.3d 59.) " ' [C]ases involving claimed defamations by credit reporting agencies can be readily distinguished from those involving alleged defamations through so-called mass-media publication. In claimed libels involving, for example, magazines, books, newspapers, and radio and television programs, the publication has been for public attention and knowledge and the person commented on, if only in his role as a member of the public, has had access to such published information.' [Citation.]" (*Id.* at p. 63, fn. 2.) Other jurisdictions are in accord. "The discovery rule does not apply to a public libel printed in a newspaper widely available to the public, including the plaintiff." (*Flynn v. Associated Press* (1988) 401 Mass. 776 [519 N.E.2d 1304, 1307] [citing cases].)

■ The doctrine of fraudulent concealment is similarly inapplicable in this case. Absent a fiduciary relationship, nondisclosure is not fraudulent concealment—affirmative deceptive conduct is required. (*Johnson, supra,* 43 Cal.App.3d at p. 896.) In *Johnson,* a magazine article was republished, without the plaintiffs' knowledge, in a college textbook of which they had no reason to be aware. Assuming that the statute could be tolled in a USPA case, the court held that in the absence of affirmative action by defendants to prevent plaintiffs from learning of the existence of the textbook, there was no

fraudulent concealment, for "the mere fact that plaintiffs were unaware of [a] publication does not provide the necessary ingredient for fraudulent concealment." (*Ibid.*)

Those principles, fairly applied here, support the result below. Plaintiffs here, as did plaintiffs in the other cases, assert that they did not see or become aware of the broadcasts at the time they were made. However, like a publication in a nationally distributed book, newspaper, or magazine, the broadcasts on national television over a period of many months meant that plaintiffs had access to them, if only as members of the general public. The images of which they complain were broadcast, weekly, on network television for more than a year. The fact that these plaintiffs did not see the broadcasts does not change that—unlike a report hidden in a credit file, these images were in plain view. Allowing these plaintiffs to sue years after the broadcasts ceased, without any indication of fraud or a meaningful inability to discover the broadcasts, would violate the principal policy that underlies the rule.

■ The use of technology here requires no different result. As *Shively* made clear, the discovery doctrine has been applied to defamation and related torts only where a party could not reasonably have discovered the facts giving rise to the cause of action, such as a notation in a confidential file, or where there has been active concealment by defendants. There is no confidential file here. Although plaintiffs claim that the morphing was a wrongful act of active concealment intended to frustrate their detection of the existence of their claim, the undisputed facts do not support this argument. There was no evidence that the likenesses that were broadcast, "morphed" as they were, were unrecognizable to each of the plaintiffs at first viewing; in fact, their claim is that their humiliation and emotional distress arises from the manner in which they were portrayed.

Plaintiffs' argument with respect to accrual of emotional distress claims is not only precluded by law (see pt. 3, *ante*), but also runs contrary to the principles underlying the USPA. In *Morgan v. Hustler Magazine, Inc.* (N.D. Ohio 1987) 653 F.Supp. 711, 718, disapproved on other grounds in *Angelotta v. American Broadcasting Corp.* (6th Cir. 1987) 820 F.2d 806, 808–809, the plaintiff argued, as do plaintiffs here, that the tort of intentional infliction of emotional distress was not complete until the plaintiff discovered the acts in question, and thus that the statute could not begin to run until that time. The court, applying Ohio's version of the single publication rule embodied in the USPA, firmly rejected that argument in the mass media context. (*Ibid.*) The rule is no different in California.

## DISPOSITION

The judgment of the trial court is affirmed. Respondents are to recover their costs on appeal.

Perluss, P. J., and Woods, J., concurred.