Filed 4/1/14; pub. order 4/28/14 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| NBCUNIVERSAL MEDIA, LLC et al., | B250892 |
| Petitioners, | (Los Angeles County Super. Ct. No. BC475995) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent, | |
| LARRY MONTZ et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDINGS in mandate. Ernest M. Hiroshige, Judge. Petition granted.

Katten Muchin Rosenman, Gail Migdal Title, Joel R. Weiner, and Gloria C. Franke for Petitioners.

No appearance for Respondent.

Law Offices of Martin N. Buchanan, Martin N. Buchanan; Girardi & Keese, and Graham B. LippSmith for Real Parties in Interest.

## INTRODUCTION

Petitioners NBCUniversal Media, LLC, formally known as NBC Universal, Inc. and Universal Television Network seek a writ of mandate directing the superior court to vacate its order denying their motion for summary judgment and to enter an order granting the motion of summary judgment against real parties in interest Larry Montz and Daena Smoller (RPIs). For the reasons stated below, we will issue a peremptory writ of mandate.

## PROCEDURAL HISTORY

On December 29, 2011, RPIs filed a complaint for damages against petitioners in Los Angeles County Superior Court, alleging (1) breach of implied contract, and (2) breach of confidence. According to RPIs, from 1996 through 2001, they presented ideas and concepts for a television program, entitled *Ghost Expeditions*: *Haunted*, (referred to as "Concepts") to petitioners, "consistent with well-established customs and practices of the entertainment industry . . . ." RPIs' idea was a reality television series where "professional paranormal investigators" would lead a team that included "normal people with regular jobs" to investigate haunted houses throughout the country. After informing RPIs they were not interested, petitioners then teamed up with another company to "misappropriate, use and exploit Plaintiffs' Concepts by producing the hit series *Ghost Hunters* without Plaintiffs' permission . . . and/or without compensating Plaintiffs . . . ."[1] RPIs alleged petitioners breached an implied contractual obligation not to "disclose, use and/or exploit the Concepts without Plaintiffs' permission and/or

---

[1]    Respondents also sued Pilgrim Films & Television, Inc., Craig Piligian, and Jason Conrad Hawes, who produced the *Ghost Hunters* show. The trial court granted summary adjudication as to these defendants, and respondents did not appeal that ruling.

2

without compensating Plaintiffs in the form of payments, credit and other consideration . . . ." RPIs further alleged that as a result of their conduct, a confidential relationship formed between petitioners and them, and that petitioners "breached the confidential relationship by, among other actions, teaming up with and using [another company] to disclose, misappropriate, use and exploit Plaintiffs' Concepts by disclosing Plaintiffs' Concepts and producing the hit series *Ghost Hunters*, repackaged as Defendants' own projects without Plaintiffs' permission and/or without compensating Plaintiffs . . . ." RPIs sought injunctive and other equitable relief, petitioners' profits, and punitive damages.

Petitioners filed an answer, generally denying the allegations. They also asserted 20 affirmative defenses, including the defense that each of the causes of action was barred by the applicable two-year statute of limitations set forth in Code of Civil Procedure section 339.[2]

On December 13, 2012, petitioners filed a motion for summary judgment, asserting (1) that RPIs' claims were time-barred by the applicable two-year statute of limitations, and (2) that the undisputed evidence demonstrated that *Ghost Hunters* was created independent of petitioners' Concepts. In their separate statement of undisputed material facts in support of the motion for summary judgment, petitioners asserted -- and RPIs did not dispute: (1) that petitioners approved the *Ghost Hunters* show in April 2004; (2) that the show premiered on the Syfy cable channel on October 6, 2004; (3) that RPIs first filed a lawsuit based upon the purported misappropriation of their ideas more than two years later in federal court on November 8, 2006; and (4) that after a series of court proceedings (including voluntary dismissal of their copyright infringement claim), RPIs re-filed the remaining state law claims in superior court on December 29, 2011.

---

[2]     All further statutory citations are to the Code of Civil Procedure.

3

Petitioners also produced evidence that on July 22, 2004, Robyn Lattaker-Johnson, petitioners' director of development for alternative programming at Syfy, sent an e-mail to Eric Mofford, RPIs' producer, informing him about the *Ghost Hunters* show. The e-mail described the show as a "docu soap about a group of plumbers-by-day/ghost-hunters-by-night that set out on missions to disprove ghosts or paranormal activity." Mofford immediately forwarded the e-mail to Montz. In his deposition, Montz admitted speaking with Mofford about the e-mail: "I[] asked him if he had found out if this was our show that was stolen or not, and he replied by saying that Robyn says it's not our show, that it's a docu-soap." Montz stated that he did not know what a "docu-soap" was; he asked Mofford, but was not enlightened. Montz also admitted that at that time it seemed possible that the show *Ghost Hunters* was an improper use of his idea for a television show. Montz and Mofford continued to discuss *Ghost Hunters* on two subsequent occasions, and at one point, Mofford told Montz that "he had pitched the show directly to [petitioners], as well as others . . . , and it looked like our show had been lifted from us."

Petitioners argued that the statute of limitations on RPIs' claims began to run, at the latest, when the *Ghost Hunters* series premiered on the Syfy channel on October 6, 2004 (more than two years before RPIs filed suit), and that RPIs were on inquiry notice months before that date.

RPIs opposed the motion for summary judgment, arguing that their claims were not precluded by the statute of limitations, and that there were triable issues of material fact regarding petitioners' independent creation defense. As to the statute of limitations, RPIs contended that they were entitled to delayed accrual of their claims under discovery rule, as they did not discover their claims until sometime in 2005, when Smoller saw "an episode of the show . . . upon which she

4

realized that *Ghost Hunters* was not a fictional show." They noted that Montz could not recall the exact date "he was made aware of Defendants' *Ghost Hunters* series when [*sic*] he believed Plaintiffs' concepts [were] being used improperly." RPIs further asserted that they were not put on inquiry notice by the July 22, 2004 e-mail from Lattaker-Johnson, as they did not know the meaning of the term "docu-soap."

In support of their opposition, RPIs produced transcript excerpts from the depositions of Montz and Smoller. Montz testified that he "believe[d]" he saw two episodes of *Ghost Hunters* after the lawsuit was filed. Before the lawsuit was filed, he saw "segments" while he was "changing channels, [when he] stopped on that show for like a minute and a half, and that was it." Montz stated he did not watch more because he was not interested in seeing a show "stolen from me" that "duplicated our treatment." He knew the show had copied his idea from "reading the review or a few of their shows on the Internet and in watching the promos and a few segments." Smoller testified that after she first saw an episode of *Ghost Hunters* in 2005, she discussed the show with Montz. The substance of their discussion was that the show "apparently . . . wasn't a soap opera, and it wasn't portrayed as something fictional, and it seemed shockingly similar to what we had been pitching."

Petitioners' reply argued that RPIs had filed their claims more than a month after the statute of limitations had expired. Petitioners asserted that RPIs were not entitled to delayed accrual under the discovery rule. They contended that delayed discovery was inapplicable because the offending work -- *Ghost Hunters* -- had been publicly televised. Moreover, even if the discovery rule applied, RPIs were on inquiry notice before the show premiered on Syfy.

5

In a tentative ruling, the trial court found that RPIs had met their burden to show a triable issue of fact as to whether they should have suspected a factual basis for their claims prior to November 8, 2004. The court noted that RPIs had submitted evidence: (1) that they were informed in July 2004 that *Ghost Hunters* was a "docu soap," but that they did not know the meaning of the term "docu soap"; (2) that Montz could not recall that date he was made aware that RPIs' Concepts were being used improperly; and (3) that Smoller did not see an episode of the show until 2005. On July 31, 2013, the trial court denied petitioners' motion for summary judgment. Regarding the statute of limitations, the court ruled:

"In this case, Plaintiffs originally filed their action on November 8, 2006, only a month after the two-year statute of limitations would have expired based on the public release date of October 6, 2004. As discussed in the tentative ruling and in Plaintiffs' papers, there is evidence to explain that one-month delay that must be considered by the trier of fact. The cases cited by Defendants generally involved public release of a movie in theaters, which would draw more attention than release of a television series on a cable television network. Those cases also generally involved much longer delays in filing suit after public release of the defendant's work."

On August 27, 2013, petitioners filed a verified petition for writ of mandate, seeking a peremptory writ of mandate directing the superior court to set aside and vacate its order denying petitioner's motion for summary judgment and enter a new order granting the motion in its entirety. On November 21, 2013, this court issued a request for a preliminary response from RPIs and a reply from petitioners, on the sole issue of the statute of limitations. After considering the preliminary response and reply, on January 24, 2014, this court issued an alternative writ of

6

mandate directing the superior court either to grant the relief requested by petitioners or to show cause why it should not be ordered to do so.[3]

On February 13, 2014, RPIs filed a return to the alternative writ. RPIs attempted to distinguish the cases cited in this court's alternative writ and contended that the holdings in *Shively* and *Hebrew Academy* addressing the discovery rule were limited to claims governed by the Uniform Single Publication Act (USPA); as RPIs' claims were not governed by the USPA, they contended the holdings in those cases did not control. Alternatively, RPIs argued that even if the USPA applied, it would bar only those claims based on episodes of *Ghost Hunters* broadcast more than two years before the lawsuit was filed. Finally, RPIs contended that under "continuing-wrong principles," the statute of limitations did not bar their claims.

On February 27, 2014, petitioners filed their reply, arguing that RPIs had failed to demonstrate their claims were not time-barred. Petitioners asserted that the Supreme Court's holdings regarding the discovery rule in *Shively* and *Hebrew Academy* were not limited to cases governed by the USPA, and that the statute of limitations thus began to run no later than the public disclosure of the material, i.e.,

---

[3]    In our alternative writ, we cited *Davies v. Krasna* (1975) 14 Cal.3d 502 (*Davies*) [statute of limitations accrues no later than date of public dissemination of disputed material]; *Benay v. Warner Bros. Entertainment, Inc*. (9th Cir. 2010) 607 F.3d 620 (*Benay*) [generally, accrual date for breach of implied contract is date on which work is released to public]; *Shively v. Bozanich* (2003) 31 Cal.4th 1230 (*Shively*) [discovery rule inapplicable once alleged defamatory material published]; *Hebrew Academy of San Francisco v. Goldman* (2007) 42 Cal.4th 883 (*Hebrew Academy*) [discovery rule did not extend statute of limitations beyond publication of alleged defamatory statements although dissemination to public was extremely limited]; and *Long v. Walt Disney Co*. (2004) 116 Cal.App.4th 868 (*Long*) [statute of limitations for exploitation of likeness accrued when disputed images were broadcast on national television; discovery rule inapplicable].

7

the October 6, 2004 broadcast. They further contended that RPIs had forfeited their "continuing wrong" arguments by failing to raise them in the trial court or in RPIs' preliminary response.

## DISCUSSION

A. *Standard of Review*

An order denying summary judgment is reviewable by a petition for writ of mandamus. (*Transport Ins. Co. v. TIG Ins. Co*. (2012) 202 Cal.App.4th 984, 1011.) "'Where the facts are undisputed and the law establishes the right of a party to an order or to the relief which the court has refused, the writ will lie.'" (*Whitney's at the Beach v. Superior Court* (1970) 3 Cal.App.3d 258, 265, quoting *California Pine Box & Lbr. Co. v. Superior Court* (1910) 13 Cal.App. 65, 70.) "A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail. [Citation.]" (*Molko v. Holy Spirit Assn*. (1988) 46 Cal.3d 1092, 1107.) Generally, "the party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 850.)

Here, petitioners contend that on the undisputed facts, they are entitled to summary judgment, as RPIs' claims were filed after the statute of limitations had run. For the reasons explained below, we agree.

8

B.      *Statute of Limitations*

RPIs' causes of action are governed by the two-year limitations period set forth in section 339.  (§ 339, subd. (1) [claims based on a contract, obligation or liability not founded upon an instrument of writing]; *Blaustein v. Burton* (1970) 9 Cal.App.3d 161, 185 (*Blaustein*) [breach of implied contract claim governed by two-year limitations period of section 339, subdivision 1]; *Davies*, *supra*, 14 Cal.3d at p. 511 [assuming action for breach of confidence is valid cause of action, it is governed by two-year limitations period of section 339, subdivision 1.)[4]

Generally, the limitations period starts running when the last element of a cause of action is complete.  (*Fox v. Ethicon Endo-Surgery, Inc*. (2005) 35 Cal.4th 797, 806 (*Fox*).)  As used in this context, the "'elements'" of a cause of action are the "'generic'" elements of wrongdoing, causation, and injury.  (*Id*. at p. 807.)  "A suit for breach of an implied contract not to exploit an idea without paying for it . . . arise[s] only with the sale or exploitation of the idea." (*Davies*, *supra*, 14 Cal.3d at pp. 511-512.)  Whether and when an idea has been exploited -- as understood and intended by the parties -- may be difficult to ascertain.  For example, exploitation of an idea may occur the moment a preliminary script is written embodying the idea, even if no subsequent publicly-disclosed work based upon such script is ever produced.  On the other hand, the exploitation may occur

---

[4]      RPIs alleged a claim for "breach of confidence," as opposed to a claim for breach of a confidential relationship.  (See *Davies*, *supra*, 14 Cal.3d at pp. 510, 511 [noting difference between two claims; no support for a finding of existence of confidential relationship where defendant was not a trusted friend or adviser, but rather "a prospective purchaser or exploiter of Davies' idea"].)  Although several lower California courts have recognized a breach of confidence cause of action (see *Balboa Ins. Co. v. Trans Global Equities* (1990) 218 Cal.App.3d 1327, 1345), the California Supreme Court has not yet ruled on the validity of such a cause of action.  (*Pooshs v. Philip Morris USA, Inc*. (2011) 51 Cal.4th 788, 798, fn. 5.)

upon defendants' "disclosure of the idea to a substantial segment of the public since such use would tend to destroy any further marketability of the idea." (*Blaustein*, *supra*, 9 Cal.App.3d at p. 186.) Due to the difficulty in ascertaining the parties' intent in implied contract cases, "California courts generally assume that the accrual date is the date on which the work is released to the general public," as the public release would destroy any further marketability. (*Benay v. Warner Bros. Entertainment, Inc*. (9th Cir. 2010) 607 F.3d 620, 633.) For a breach of confidence cause of action, the accrual date is easier to ascertain: the statute of limitations runs from the date of the first unauthorized disclosure. (*Davies*, *supra*, 14 Cal.3d at p. 512.)

"While resolution of the statute of limitations issue is normally a question of fact, where the uncontradicted facts established through discovery are susceptible of only one legitimate inference, summary judgment is proper." (*Jolly v. Eli Lilly & Co*. (1988) 44 Cal.3d 1103, 1112 (*Jolly*); see also *Norgart v. Upjohn Co*. (1999) 21 Cal.4th 383, 405 (*Norgart*) [affirming summary judgment on statute of limitations ground]; *Gutierrez v. Mofid* (1985) 39 Cal.3d 892, 902-903 [same]; *Sanchez v. South Hoover Hospital* (1976) 18 Cal.3d 93, 103 [same].)


C.     *Motion for Summary Judgment*

In their motion for summary judgment, petitioners made a prima facie showing that RPIs' causes of action were time-barred as a matter of law. With regard to both RPIs' breach of implied contract and breach of confidence claims, the causes of action accrued no later than the date when the *Ghost Hunters* show was released to the general public, i.e., October 6, 2004. Thus, RPIs had until October 5, 2006 to file their lawsuit. They did not do so until November 8, 2006. Accordingly, RPIs' causes of action were time-barred, unless an exception applies.

10

D.    *The Rationales for Applying the Discovery Rule to Delay Accrual.*

The most important exception to the general rule regarding accrual of a cause of action is the "'discovery rule.'" (*Pooshs v. Philip Morris USA, Inc.*, *supra*, 51 Cal.4th at p. 797.)  "It may be expressed by the Legislature or implied by the courts." (*Norgart*, *supra*, 21 Cal.4th at p. 397.)  The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." (*Fox*, *supra*, 35 Cal.4th at p. 807.)  RPIs contend they are entitled to delayed accrual of their causes of action under the discovery rule because they did not see an episode of *Ghost Hunters* until sometime in 2005.  We disagree.

RPIs have the burden of demonstrating their entitlement to delayed accrual of their causes of action.  (See *Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 850 [once party moving for summary judgment makes a prima facie case showing nonexistence of any triable issue of material fact, burden shifts to opposing party to show a triable issue of material fact].)  "In order to rely on the discovery rule for delayed accrual of a cause of action, '[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.'" (*Fox*, *supra*, 35 Cal.4th at p. 808, quoting *McKelvey v. Boeing North American, Inc.* (1999) 74 Cal.App.4th 151, 160, superseded in part by statute, as stated in *Grisham v. Philip Morris U.S.A., Inc.* (2007) 40 Cal.4th 623, 637, fn. 8, italics omitted; accord, *April Enterprises, Inc. v. KTTV* (1983) 147 Cal.App.3d 805, 832 (*April Enterprises*) ["plaintiff must plead facts sufficient to convince the trial judge that delayed discovery was justified"].)

11

A plaintiff's inability to discover a cause of action may occur "when it is particularly difficult for the plaintiff to observe or understand the breach of duty, or when the injury itself (or its cause) is hidden or beyond what the ordinary person could be expected to understand." (*Shively*, *supra*, 31 Cal.4th at p. 1248; accord *April Enterprises*, *supra*, 147 Cal.App.3d at p. 831 ["A common thread seems to run through all the types of actions where courts have applied the discovery rule. The injury or the act causing the injury, or both, have been difficult for the plaintiff to detect."].) For example, where a professional, such as a doctor or a lawyer, breaches a duty of care, "delayed accrual is justified on the basis that the expertise expected of professionals is beyond the ability of laypersons to evaluate, and on the further basis that it may be impossible for a layperson even to observe the professional's application of this expertise." (*Shively*, at p. 1248, citing *Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 188 [legal malpractice claim].)[5]

Although delayed accrual under the discovery rule generally applies to most tort actions, it has been held applicable to certain types of breach of contract actions, such as those involving fraud or misrepresentation by the defendant. (*April Enterprises*, *supra*, 147 Cal.App.3d at p. 830 [citing cases]; cf. *Bernson v. Browning-Ferris Industries* (1994) 7 Cal.4th 926, 936 ["[A] defendant may be equitably estopped from asserting the statute of limitations when, as the result of intentional concealment, the plaintiff is unable to discover the defendant's actual

---

[5] The discovery rule has also been applied to "causes of action involving the breach of a fiduciary relationship" (*April Enterprises*, *supra*, 147 Cal.App.3d at p. 827) on the rationale that in fiduciary relationships, a plaintiff is often unable to observe or understand a breach of fiduciary duty because the fiduciary is "in full control of [the plaintiff's] affairs and of the expenditure of its funds." (*San Leandro Canning Co., Inc. v. Perillo* (1931) 211 Cal. 482, 487).

12

identity"].)  For example, section 339 provides that in "[a]n action based upon the rescission of a contract not in writing," "[w]here the ground for rescission is fraud or mistake, the time does not begin to run until the discovery by the aggrieved party of the facts constituting the fraud or mistake."  (§ 339, subd. 3.)[6]

Finally, for "certain, rather unusual breach of contract actions," "the discovery rule may be applied to breaches which can be, and are, committed in secret and, moreover, where the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time."  (*April Enterprises, supra*, 147 Cal.App.3d at p. 832 [breach of contract claim].)[7]  In *April Enterprises,* the court provided the following rationale for this holding:  "In most instances [where the discovery rule has been applied], the defendant has been in a far superior position to comprehend the [wrongful] act and the injury.  And in many, the defendant had reason to believe the plaintiff remained ignorant he had been wronged.  Thus, there is an underlying notion that plaintiffs should not suffer where circumstances prevent them from knowing they have been harmed.  And often this is accompanied by the corollary notion that defendants should not be allowed to knowingly profit from their injuree's ignorance."  (*Id*. at p. 831.)

---

[6]  Section 339 also provides that a cause of action "upon a contract, obligation or liability, evidenced by a certificate, or abstract or guaranty of title of real property, or by a policy of title insurance" "shall not be deemed to have accrued until the discovery of the loss or damage suffered by the aggrieved party thereunder."  (§ 339, subd. 1.)  Respondents' causes of action, however, are not based on a contract, obligation or liability evidenced by a writing.

[7]  Where a breach of contract is also a breach of a fiduciary duty, a plaintiff is entitled to delayed accrual of the breach of contract action.  (*April Enterprises, supra*, 147 Cal.App.3d at p. 832; *Lee v. Escrow Consultants, Inc.* (1989) 210 Cal.App.3d 915, 922-923 [same].)

13

E.     *RPIs Have Failed to Show They Are Entitled to Delayed Accrual Under the*
       *Discovery Rule.*

Here, while RPIs have pled facts showing the time and manner of their discovery of their causes of action (Smoller's viewing of an episode of *Ghost Hunters* in 2005), they have not pled facts showing an inability to discover their claims earlier despite reasonable diligence.  RPIs alleged that the *Ghost Hunters* series, including its initial episode, constituted an unlawful appropriation of the Concepts they shared in confidence with petitioners.  As a matter of law, their causes of action were complete no later than the date of the initial broadcast, October 6, 2004, because on that date, the marketability of the Concepts was destroyed due to its disclosure to the public.  (*Blaustein*, *supra*, 9 Cal.App.3d at p. 186.)  Due to the initial broadcast, petitioners' alleged breach of the implied contract or breach of confidence was no longer "particularly difficult for [RPIs] to observe or understand." (*Shively*, *supra*, 31 Cal.4th at p. 1248)  Likewise, the injury itself (or its cause) was no longer "hidden or beyond what the ordinary person could be expected to understand."  (*Ibid.*)

RPIs do not contend, nor does the evidence show, that petitioners fraudulently concealed the broadcast from them, or that they lacked a meaningful ability to view it.  (*Long* , *supra*, 116 Cal.App.4th at p. 875 ["Allowing these plaintiffs to sue years after the broadcasts ceased, without any indication of fraud or a meaningful inability to discover the broadcasts, would violate the principal policy that underlies the [discovery] rule."].)  Thus, there were no "circumstances prevent[ing] them from knowing they ha[d] been harmed."  (*April Enterprises, supra*, 147 Cal.App.3d at p. 831; cf. *Perez-Encinas v. Amerus Life Ins. Co*. (N.D. Cal. 2006) 468 F. Supp.2d 1127, 1136-1137 [declining to apply discovery rule to delay accrual of breach of contract action because alleged breach of contract not

14

difficult to detect, breach was not secretive, and defendant not responsible for circumstances preventing plaintiffs from knowing about alleged breach].)

The mere fact that RPIs did not personally view the program until sometime after the first broadcast is irrelevant, as the discovery rule does not operate to delay accrual of a cause of action "beyond the point at which their factual basis became accessible to plaintiff to the same degree as it was accessible to every other member of the public." (*Shively*, *supra*, 31 Cal.4th at p. 1253 [notwithstanding fact that plaintiff was not aware of defamatory statements in book until December 1996, statute of limitations ran from when book was published in October 1996]; see also *Christoff v. Nestle USA, Inc*. (2009) 47 Cal.4th 468, 483 (*Christoff*) [no delayed accrual for misappropriation of likeness cause of action where the likeness of the plaintiff appeared on a product label that was "'not published in an inherently secretive manner,'" but was distributed widely to the public]; *Hebrew Academy*, *supra*, 42 Cal.4th at p. 895 ["Because plaintiffs in the present case had access to the [defamatory] document from the time it was published, the discovery rule does not apply"]; *Long*, *supra*, 116 Cal.App.4th at p. 874 [discovery rule inapplicable where plaintiffs' images were broadcast on national television].) Even in non-USPA cases, the Supreme Court has declined to delay accrual under the discovery rule where the cause of action could be ascertained from publicly available information. (See *Utility Cost Management v. Indian Wells Valley Water Dist*. (2001) 26 Cal.4th 1185, 1197 [declining to delay accrual of statutory-based action to recover alleged overcharges paid to public utility because information about excessiveness of the charges was in the public record].)

We reject the trial court's ruling that RPIs are entitled to delayed accrual under the discovery rule because *Ghost Hunters* was broadcast on the Syfy channel rather than released in theatres. Regardless of whether the trial court was correct in

15

surmising that release in theaters would attract more attention than release of a series on a cable television network, public disclosure to even a limited audience is sufficient to preclude a plaintiff from arguing that the breach and injury were secretive and difficult to detect. (See *Hebrew Academy*, *supra*, 42 Cal.4th at pp. 888, 895 [discovery rule inapplicable despite fewer than 10 copies of transcripts containing defamatory statements being published and distributed to a limited audience].)

RPIs' reliance on *Nelson v. Indevus Pharmaceuticals, Inc.* (2006) 142 Cal.App.4th 1202 (*Nelson*) is misplaced. There, the appellate court rejected the argument that the statute of limitations on a product liability claim began to run when the dangers of the product were publicized in media reports. (*Id.* at pp. 1205, 1208.) The *Nelson* court held that inquiry notice could not be imputed based solely on media reports. (*Ibid.*; accord *Unruh-Haxton v. Regents of University of California* (2008) 162 Cal.App.4th 343, 364.) As the *Nelson* court noted, its holding was bolstered by section 340.8, subdivision (c)(2), which expressly provides that: "'Media reports regarding the hazardous material or toxic substance contamination do not, in and of themselves, constitute sufficient facts to put a reasonable person on inquiry notice that the injury or death was caused or contributed to by the wrongful act of another.'" (*Nelson*, at pp. 1208-1209 [section 340.8 applies to claims alleging injury from prescription drugs].) As RPIs' claims do not involve hazardous materials or toxic substance contamination and they identify no statute with comparable language applicable to their claims, *Nelson* is of no assistance to them.

More important, RPIs were on inquiry notice prior to the public broadcast of the *Ghost Hunters* show. A plaintiff is on inquiry notice when she "suspects or should suspect that her injury was caused by wrongdoing, that someone has done

something wrong to her." (*Jolly*, *supra*, 44 Cal.3d at p. 1110.) Montz had asked Mofford "if he had found out if this was our show that was stolen or not, and he replied by saying that Robyn says it's not our show, that it's a docu-soap." Mofford's reply was based on a July 22, 2004 e-mail from Robyn Lattaker-Johnson, which he forwarded to Montz the same day. Thus, at the latest, by July 22, 2004, Montz suspected wrongdoing on the part of petitioners. That RPIs did not understand the meaning of the term "docu-soap" and did not view an episode of the *Ghost Hunters* show until 2005 is legally irrelevant.[8] Once RPIs were on inquiry notice, they were charged with information that could have been gained by examining public records. (*Miller v. Bechtel Corp.* (1983) 33 Cal.3d 868, 875.) As *Ghost Hunters* was publicly released and RPIs have not asserted that they were prevented from viewing the program, they are charged with knowledge of it. Accordingly, the discovery rule did not operate to delay accrual of RPIs' causes of action beyond October 6, 2004.[9]

---

[8]     RPIs do not argue -- nor do the allegations in the complaint support -- that Lattaker-Johnson was in a fiduciary relationship with Montz that could have relieved him of an obligation to make further inquiry. (See *Hobbs v. Bateman Eichler, Hill Richards, Inc.* (1985) 164 Cal.App.3d 174, 201-202 ["Where a fiduciary relationship exists, facts which ordinarily require investigation may not incite suspicion [citation] and do not give rise to a duty of inquiry [citation]"; however, "once a plaintiff becomes aware of facts which would make a reasonably prudent person suspicious, the duty to investigate arises and the plaintiff may then be charged with knowledge of the facts which would have been discovered by such an investigation."].)

[9]     RPIs' contention that *Davies* supports their argument that the statute of limitations did not run until they actually discovered the breach turns the holding of *Davies* on its head. There, the Supreme Court held that the statute of limitations on a breach of confidence claim began to run on the date the plaintiff actually discovered the breach, not a later date when the offending work was publicly released. This was because the plaintiff's actual knowledge of the breach preceded

17

F.     *Continuing-Wrong Accrual Principles*

In their return to the alternative writ, RPIs argued for the first time that under continuing-wrong accrual principles, a new cause of action accrued for each new episode of *Ghost Hunters* using their ideas without compensation. (See *Aryeh v. Canon Business Solutions, Inc*. (2013) 55 Cal.4th 1185, 1197-1198 (*Aryeh*) [explaining continuing-wrong accrual principles].) RPIs concede they did not raise this issue in their opposition to the motion for summary judgment. Nor did they raise it in their preliminary response. At the hearing on the motion for summary judgment, RPIs' counsel discussed a case, *Goldberg v. Cameron* (N.D. Cal. 2007) 482 F.Supp.2d 1136 (*Goldberg*), where "because there were continuing instances of infringement, it could not be concluded that the claim was time barred in its entirety." However, *Goldberg* was a copyright infringement case, and RPIs do not have a copyright infringement claim. Thus, counsel's statement was insufficient to invoke the continuing-wrong accrual principles, and RPIs have forfeited this argument. (*Perez v. Grajales* (2008) 169 Cal.App.4th 580, 591 [arguments raised for first time on appeal are generally deemed forfeited]; *DiCola v. White Brothers Performance Products, Inc*. (2008) 158 Cal.App.4th 666, 676 [possible theories that were not fully developed or factually presented to the trial court cannot create a "triable issue" on appeal].)

Moreover, resolution of the argument requires application of equitable principles to a factual record that RPIs have failed to develop. Thus, we decline RPIs' invitation to exercise our discretion to consider this new argument. (*Zimmerman, Rosenfeld, Gersh & Leeds LLP v. Larson* (2005) 131 Cal.App.4th

the public release. (*Davies*, *supra*, 14 Cal.3d at pp. 511-512.) No similar facts are present here, except to the extent RPIs should or could have discovered their claims earlier than the initial broadcast.

18

1466, 1488 [argument deemed forfeited "if it was not raised below and requires consideration of new factual questions"]; *Piscitelli v. Friedenberg* (2001) 87 Cal.App.4th 953, 983 ["As a general rule, a new theory may not be presented for the first time on appeal unless it raises only a question of law and can be decided based on undisputed facts."].)[10]

---

[10] In addition, on the facts alleged, continuing-wrong accrual principles do not assist RPIs. Those principles include the continuing violation doctrine and the theory of continuous accrual. (*Aryeh*, *supra*, 55 Cal.4th at p. 1197.) The continuing violation doctrine applies to aggregate a series of small harms, any one of which may not be actionable on its own, into a single cause of action. The statute of limitations would run from the date of the last harmful act. Here, even were acts such as disclosure, screenwriting and filming not actionable on their own, the premiere of *Ghost Hunters* on Syfy on October 6, 2004 would be the last act necessary for a discrete cause of action against petitioners.

As to the theory of continuous accrual, the statute of limitations runs from each breach of a continuous or recurring obligation. (*Aryeh*, *supra*, 55 Cal.4th at p. 1199.) However, RPIs alleged that petitioners exploited their idea for a reality television *series*. Thus, each broadcast of a new episode of the *Ghost Hunters* series is part of a single breach. Each broadcast of *Ghost Hunters* would constitute not a new breach, but rather additional harm. (See *Blair v. Nevada Landing Partnership* (Ill.Ct.App. 2006) 859 N.E.2d 1188, 1193 [misappropriation of likeness for use in advertising campaign from 1995 to 2004 not a continuing violation, as it constituted a single overt act with continuing ill effects; "To hold otherwise would cause an attendant problem of an endless tolling of the statute of limitations . . . ."]; see also *Kourtis v. Cameron* (9th Cir. 2005) 419 F.3d 989, 1000-1001 [in case alleging breach of implied contract for uncompensated use of plaintiffs' concept in a film, court declined to apply continuing wrong theory to delay accrual of claim beyond date of film's public release, despite later release of film on DVD and use of same concept in sequel], abrogated on other grounds by *Taylor v. Sturgell* (2008) 553 U.S. 880; cf. *Christoff*, *supra*, 47 Cal.4th at p. 478, 482 [declining to address continuing wrong argument and remanding for development of factual record whether use of likeness in advertising campaign constituted single publication under USPA].)

The situation is analogous to a case where there has been an injury but the amount of resulting harm is uncertain. There, the statute of limitations runs from

19

In sum, the undisputed facts and the law established the right of petitioners to an order granting their motion for summary judgment.

## DISPOSITION

It is ordered that a peremptory writ of mandate issue commanding respondent superior court to set aside and vacate its order denying motion for summary judgment signed and filed July 31, 2013, and to enter an order granting

---

the infliction of "appreciable and actual harm." (*Davies*, *supra*, 14 Cal.3d at p. 514.) In *Davies*, the plaintiff suffered appreciable and actual harm when the defendant first disclosed the writer's confidential idea in 1955 and destroyed the marketability of the idea, though the defendant earned no profits from the disclosure until 1958. (*Id*. at p. 511; see also *Pooshs v. Philip Morris USA, Inc.*, *supra*, 51 Cal.4th at p. 797 ["Must the plaintiff sue even if doing so will require the jury to speculate regarding prospective damages? Or can the plaintiff delay suit until a more accurate assessment of damages becomes possible? Generally, we have answered those questions in favor of prompt litigation, even when the extent of damages remains speculative."].) Similarly, here, respondents suffered appreciable and actual harm at the latest, by October 6, 2004, when the *Ghost Hunters* show premiered on Syfy, and destroyed any marketability for their idea of a paranormal investigation reality television series. Thus, under continuing-wrong accrual principles, the two-year statute of limitations began running on October 6, 2004. Because RPIs' claims were filed more than two years later, they are time-barred.

summary judgment as prayed for in petitioners' notice of motion filed December 13, 2012.

Petitioners shall have their costs on appeal.


MANELLA, J.


We concur:


WILLHITE, Acting P. J.


EDMON, J.*

_____
* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section  6 of the California Constitution.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| NBC UNIVERSAL MEDIA, LLC et al., | B250892 |
| Petitioners, | (Los Angeles County Super. Ct. No. BC475995) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Respondent; | [NO CHANGE IN JUDGMENT] |
| LARRY MONTZ et al., | |
| Real Parties in Interest. | |

THE COURT:*

      The opinion in the above-entitled matter, filed on April 1, 2014, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be certified for publication in its entirety in the Official Reports and it is so ordered.

      There is no change in judgment.

_____

*WILLHITE, Acting P.J.      MANELLA, J.      EDMON, J.**

**Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.