Filed 6/23/14  Kinney v. Barnes CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ROBERT KINNEY et al., | B250188 |
| Plaintiffs, Respondents and Cross-Appellants, | (Los Angeles County Super. Ct. No. BC488409) |
| v. | |
| A. HARRISON BARNES et al., | |
| Defendants, Appellants and Cross-Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard L. Fruin, Jr., Judge.  Affirmed in part, reversed in part, and remanded.

Harrison Barnes, A. Harrison Barnes, Michael R. Parker and Carmen R. Shain for Defendants, Appellants and Cross-Respondents.

Fernald Law Group, Brandon C. Fernald and Rachel Stanger for Plaintiffs, Respondents and Cross-Appellants.

A. Harrison Barnes is the founder and operator of several law employment-related companies, BCG Attorney Search (BCG), Law Crossing, Employment

Crossing, Professional Authority, and Law Firm Staff (Barnes and his companies collectively referred to as appellants). Robert Kinney formerly worked as a legal recruiter for BCG, but after his employment with BCG was terminated, he founded his own company, Kinney Recruiting (Kinney and Kinney Recruiting collectively referred to as respondents). Kinney subsequently made anonymous, disparaging remarks about appellants on a website, leading to a libel suit against him by appellants. Kinney prevailed, primarily on statute of limitations grounds. (See *BCG Attorney Search v. Kinney* (July 21, 2011, B223326) [nonpub. opn.] (*BCG I*).)

After prevailing in the libel suit, respondents filed the underlying suit at issue in this appeal, alleging malicious prosecution and five other causes of action against appellants. The malicious prosecution claim was based on appellants' libel suit, and the other five claims were based on a press release profiling Kinney that BCG had posted on its website when he first was employed by BCG. The superior court granted appellants' special motion to strike under Code of Civil Procedure section 425.16[1] as to the malicious prosecution cause of action, denied it as to the others, and awarded appellants $2,500 in attorney fees.

Appellants appeal from the denial of their motion to strike as to the five claims based on the press release. They contend that the trial court erred in that ruling and in denying their motion to reconsider the amount of the fee award. Respondents cross-appeal from the trial court's grant of appellant's motion to strike as to the malicious prosecution cause of action.

---

[1] Such a motion is "commonly known as an anti-SLAPP (strategic lawsuit against public participation) motion." (*Olsen v. Harbison* (2005) 134 Cal.App.4th 278, 280.) All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

We conclude that appellants' motion to strike should have been granted as to all causes of action. We therefore reverse in part, and remand with directions to enter a new order granting the motion and for reconsideration of the attorney fee award.

## FACTUAL AND PROCEDURAL BACKGROUND

Kinney worked as a legal recruiter for BCG from April 2002 to March 2004. In May 2002, BCG posted a press release on its website, introducing Kinney as "the newest member of our team," and describing his background and credentials. This profile was still available on BCG's website as of June 2012, despite Kinney's request several years earlier that it be removed.

BCG terminated Kinney's employment in March 2004 after learning that Kinney had agreed to pay a "kickback" to an associate at a law firm, in violation of BCG policy. Kinney subsequently founded his own company, Kinney Recruiting, Inc.

In May 2008, Kinney wrote a 12-paragraph post entitled "BCG Attorney Search and Affiliated Companies Company [*sic*] Built on a web of lies" on a website, www.ripoffreport.com. Kinney signed the post under the name "Albert." In the post, Kinney describes Barnes as a "scum bag" who is "pathologically incapable of telling the truth about almost anything. He is a master at shading the truth." Kinney accused Barnes of "cooking the books" and "pay[ing] for his mortgage on his house through the company accounts." Kinney wrote that none of BCG's recruiters "actually did much recruiting," and that he "would bet that the majority of the people who do work for the company are probably still in India." Kinney also wrote disparaging comments about Legal Authority and Law Crossing, warning readers, "Just don't believe a SINGLE THING you read on

3

[Law Crossing's] website." Kinney ended the post by stating, "If you choose to work with these companies, you will be doing business with a guy who has negative references from most people who have known him throughout his life from boyhood to his current age of about 40. From an ex-wife, to his own father, to his fraternity brothers, to his former work colleagues, to his former and probably current employees, there are dozens of people who would stand up and say, 'don't trust Harrison Barnes.'"

In response to the post on the website, Barnes filed a complaint in the Los Angeles Superior Court for libel against unknown Doe defendants in November 2008. Barnes eventually obtained permission to serve a subpoena on XCentric Ventures, LLC, the operator of www.ripoffreport.com, and learned that Kinney was the author of the post. In August 2009, Barnes filed an amended complaint for libel, unfair competition, and intentional interference with prospective economic advantage, now adding BCG and his affiliated companies as plaintiffs, as well as naming Kinney and Kinney Recruiting as defendants.

The superior court granted Kinney's anti-SLAPP motion as to all the plaintiffs except BCG, which the court described as "potentially a competitor of [Kinney Recruiting]." The court reasoned that the exemption from the anti-SLAPP statute for commercial speech, found in section 425.17, subdivision (c), applied only to BCG and that Barnes accordingly bore the burden of demonstrating a probability of prevailing on the merits. The court found that he would be unable to do so because the causes of action were barred by the one-year statute of limitations applicable to actions based on libel (§ 340, subd. (c)).[2] The court

---

[2] The court also cited Civil Code section 47, subdivision (c), and noted that "there was already a good deal of on-line discussion regarding [appellants'] businesses when . . . Kinney posted his remarks, which were based on his first hand knowledge. Kinney's statements of opinions are privileged communications [about] interested parties."

subsequently granted Kinney and Kinney Recruiting's motion for judgment on the pleadings as to BCG, the only remaining plaintiff, on the basis that the complaint was barred by the statute of limitations.  (See *BCG I*, *supra*, B223326, 2011 WL 2936773, at *2.)  The judgment was affirmed on appeal.[3]  (See *id.*)

In March 2013, Kinney filed the complaint at issue here, alleging six causes of action:  (1) malicious prosecution; (2) appropriation of name or likeness in violation of Civil Code section 3344; (3) common law misappropriation of name and likeness; (4) unjust enrichment; (5) unfair competition in violation of Business and Professions Code section 17200; and (6) intentional interference with prospective economic relations.  Kinney's malicious prosecution claim was based on appellants' libel action in the Los Angeles Superior Court, and the remaining causes of action were based on his profile, which was still found on BCG's website despite his termination from employment.

Appellants filed a special motion to strike the complaint.  The trial court granted appellants' motion as to the cause of action for malicious prosecution but

---

[3]    The parties also engaged in litigation in Texas.  In May 2012, BCG and Professional Authority filed suit against Kinney in Texas, asserting breach of Kinney's employment contract with BCG for disclosure of confidential information, breach of fiduciary duty, and violations of the Lanham Act for false or misleading statements.  The trial court dismissed the Lanham Act claim pursuant to Texas' anti-SLAPP statute and awarded $75,000 in sanctions against BCG, but denied Kinney's motion to dismiss the other two claims.  (See *Kinney v. BCG Attorney Search, Inc.* (Tx.Ct.App., Apr. 11, 2014, No. 03-12-00579-CV) 2014 WL 1432012.)  The Texas Court of Appeals held that BCG's other two claims were barred by res judicata and affirmed the award of sanctions.  (See *id.*)

In another Texas case, Kinney sued Barnes and several of his companies for defamation based on a statement on Barnes' companies' websites about Kinney's termination from BCG.  The trial court in that case granted Barnes' summary judgment motion, and the Texas Court of Appeals affirmed.  (See *Kinney v. Barnes* (Tx.Ct.App., Nov. 21, 2012, No. 03-10-00657-CV) 2012 WL 5974092.)

denied it as to the remaining causes of action. Respondents conceded that the conduct underlying the malicious prosecution cause of action constituted petition conduct within the meaning of section 425.16. The court found that respondents failed to meet their burden of establishing a probability of prevailing on the merits of the malicious prosecution cause of action because they prevailed in the libel suit on statute of limitations grounds. The court therefore granted the anti-SLAPP motion as to the malicious prosecution cause of action. However, as to the remaining causes of action, the court reasoned that the press release profiling Kinney as a new hire at BCG was not an issue of public interest. The court therefore concluded that appellants failed to demonstrate that their underlying conduct as to those causes of action was protected for purposes of section 425.16 and denied the anti-SLAPP motion. Appellants sought $36,100 in attorney fees. The trial court awarded appellants only $2,500 in fees.

Appellants appealed from the denial in part of the anti-SLAPP motion and the amount of the fee award. Respondents cross-appealed the grant of the anti-SLAPP motion as to the malicious prosecution cause of action.

**DISCUSSION**

Appellants contend that the trial court erred in denying their anti-SLAPP motion as to respondents' five causes of action based on the press release of Kinney on the BCG website. Appellants further contend that the trial court abused its discretion in awarding only $2,500 in attorney fees. In their cross-appeal, respondents contend that the trial court erred in granting appellants' anti-SLAPP motion as to the malicious prosecution cause of action. We conclude that the trial court erred in denying appellants' anti-SLAPP motion as to the causes of action based on the press release, and that it correctly granted the anti-SLAPP motion as

6

to the malicious prosecution cause of action.  In light of our partial reversal, we remand for reconsideration of the amount of attorney fees.

*Applicable Law*

"Section 425.16 provides, in pertinent part, that '[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.'  [Citation.]  The purpose of the statute is 'to provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights.'  [Citations.]" (*No Doubt v. Activision Publishing, Inc.* (2011) 192 Cal.App.4th 1018, 1025-1026.)

"[S]ection 425.16 applies if the cause of action 'arises from' any one of four types of activities, all of which are 'protected' by the section:  '(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.'  (§ 425.16, subds. (e)(1)-(4).)" (*Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 653.)

"A two-step process is used for determining whether an action is a SLAPP. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity, that is, by demonstrating that the facts underlying the plaintiff's complaint fit one of the categories spelled out in section 425.16, subdivision (e). If the court finds that such a showing has been made, it must then determine the second step, whether the plaintiff has demonstrated a probability of prevailing on the claim. [Citation.]" (*Hecimovich v. Encinal School Parent Teacher Organization* (2012) 203 Cal.App.4th 450, 463.)

To establish the second prong, "the plaintiff must show both that the claim is legally sufficient and there is admissible evidence that, if credited, would be sufficient to sustain a favorable judgment. [Citations.] In making this assessment, the court must consider both the legal sufficiency of and evidentiary support for the pleaded claims, and must also examine whether there are any constitutional or nonconstitutional defenses to the pleaded claims and, if so, whether there is evidence to negate those defenses. [Citation.]" (*Ramona Unified School Dist. v. Tsiknas* (2005) 135 Cal.App.4th 510, 519.)

"Only a cause of action that satisfies both parts of the anti-SLAPP statute – i.e., that arises from protected speech or petitioning and lacks even minimal merit – is a SLAPP, subject to being stricken under the statute. [Citation.] [¶] An appellate court independently reviews the trial court's order granting a special motion to strike under section 425.16. [Citation.] In our evaluation of the trial court's order, we consider the pleadings and the supporting and opposing affidavits filed by the parties on the anti-SLAPP motion. In doing so, we do not weigh credibility or determine the weight of the evidence. Rather, we accept as true the evidence favorable to the plaintiff and evaluate the defendant's evidence only to

8

determine if it has defeated that submitted by the plaintiff as a matter of law. [Citation.]" (*Donovan v. Dan Murphy Foundation* (2012) 204 Cal.App.4th 1500, 1505-1506.)

*Appellant's Appeal From the Denial of Anti-SLAPP Motion as to Appropriation Causes of Action Based on the Press Release*

The trial court's denial of appellants' anti-SLAPP motion as to the claims based on the press release was based on its determination that the press release profiling Kinney on BCG's website was not an issue of public interest. Appellants contend that the press release published on BCG's website when BCG hired Kinney is a "statement or writing made in a place open to the public or a public forum in connection with an issue of public interest" within the meaning of section 425.16, subdivision (e)(3). The burden is on appellants to make a prima facie showing that respondents' claims are subject to section 425.16. (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999 (*ComputerXpress*).) We conclude that the press release on BCG's website, profiling Kinney, is an issue of public interest for purposes of the anti-SLAPP statute.

The press release states that Kinney established BCG's Texas office. It describes Kinney's education and work experience, and it adds that, "[a]long with top educational credentials, [Kinney] has worked for some of the country's most respected law firms." The profile ends with a quote from Kinney, explaining his reasons for working in legal recruiting.

"Cases construing the term 'public forum' as used in section 425.16 have noted that the term 'is traditionally defined as a place that is open to the public where information is freely exchanged.' [Citation.]" (*ComputerXpress*, *supra*, 93 Cal.App.4th at p. 1006.) The California Supreme Court has held that "[w]ebsites

9

accessible to the public . . . are 'public forums' for purposes of the anti-SLAPP statute. [Citations.]" (*Barrett v. Rosenthal* (2006) 40 Cal.4th 33, 41, fn. 4; *Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1366.) Thus, there is no question that the BCG website is a public forum. (See *Cole v. Patricia A. Meyer & Associates, APC* (2012) 206 Cal.App.4th 1095, 1121 (*Cole*) ["An Internet website that is accessible to the general public is a public forum."].) The question is whether Kinney's profile on the website is a statement made "in connection with an issue of public interest." (§ 425.16, subd. (e)(3).) We conclude that it is.

"[A]lthough section 425.16 does not define '"public interest,"' it does mandate that its provisions '"be construed broadly" to safeguard "the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances."' [Citation.]" (*Cross v. Cooper* (2011) 197 Cal.App.4th 357, 372 (*Cross*).) Thus, courts have opined that "'"an issue of public interest" . . . is *any issue in which the public is interested*. In other words, the issue need not be "significant" to be protected by the anti-SLAPP statute – it is enough that it is one in which the public takes an interest.'" (*Id.* at p. 373.)

In *Cross*, the court described three categories that provide a framework to determine "whether a statement implicates an issue of public interest and thus qualifies for anti-SLAPP protection." (*Cross, supra,* 197 Cal.App.4th at p. 374.) "The first category comprises cases where the statement or activity precipitating the underlying cause of action was 'a person or entity in the public eye.' [Citation.] The second category comprises cases where the statement or activity precipitating the underlying cause of action involved 'conduct that could directly affect a large number of people beyond the direct participants.' [Citation.] And the third category comprises cases where the statement or activity precipitating the claim involved 'a topic of widespread, public interest.' [Citation.]" (*Id.* at p. 373,

fns. omitted.) Relying on this framework, we conclude that Kinney's profile qualifies as an issue of public interest.

First, the press release by appellants profiling Kinney that gave rise to the claims at issue was precipitated by the fact that respondents are both a person and an entity in the public eye. (*Cross*, *supra*, 197 Cal.App.4th at p. 373.) Based on the allegations of their complaint, respondents concede that they have "invested substantial sums to market, advertise and to develop as a brand" Kinney's name. Respondents' efforts at marketing and advertising on the internet, as well as the internet search results in the record showing news articles about respondents and their litigation with appellants, indicate that respondents are in the public eye. (See *Chaker v. Mateo* (2012) 209 Cal.App.4th 1138, 1146-1147 [having "little difficulty" in finding that statements made on www.ripoffreport.com and a social networking website were of public interest, reasoning that, when the plaintiff joined the social networking website, he must have known that other participants on the website would have a legitimate interest in information about his character].)

Further, even if respondents are not persons or entities in the public eye, the record indicates that the quality of BCG's recruiters involves "'conduct that could directly affect a large number of people beyond the direct participants'" and is "'a topic of widespread, public interest.' [Citation.]" (*Cross, supra,* 197 Cal.App.4th at p. 373.) Respondents included in the record numerous pages of printouts of discussions on websites regarding the advantages and disadvantages of Barnes' companies, including BCG. Comments regarding Barnes and his companies included reports of good experiences with BCG, such as by working with good recruiters and finding a job through BCG. According to one post, BCG had "placed associates and partners at many of the major law firms" around the country

11

and the world, and its practice of paying its recruiters on commission was common among recruiting organizations. Another post stated that BCG helped the author, although he or she conceded that "it could depend on the local office you're dealing with." Other internet comments state that BCG is a "scam" and a "joke." Respondents also placed in the record numerous exhibits indicating Barnes' strong online presence, such as excerpts from his website giving career advice, excerpts from his online biography, his iTunes podcasts, and youtube videos giving career advice.

Moreover, respondents' arguments that they have established a probability of prevailing on the merits of the second through sixth causes of action belie their argument that the press release on BCG's website is not an issue of public interest. For example, respondents' contention that Kinney's post on the website www.ripoffreport.com was an attempt to "inform unwary consumers," as well as his citation of "numerous negative postings on the Internet concerning Barnes" and his companies, indicate that a press release on BCG's website "involved 'conduct that could directly affect a large number of people beyond the direct participants.'" (*Cross*, *supra*, 197 Cal.App.4th at p. 373.)

In fact, Kinney's own post on www.ripoffreport.com indicates that the quality of BCG's recruiters is an issue of public interest. In his discussion of BCG, Kinney wrote that "there were no more than 10 recruiters nationwide. None of them actually did much recruiting. Mostly they would fight over territories and place people off of the web ads. . . . I would bet that the majority of the people who do work for the company are probably still in India." Kinney's own statements call into question the quality of the recruiters employed by BCG, thus supporting the conclusion that his own profile, which touted his credentials, involves a matter of public interest.

12

The voluminous and vociferous discussions on several websites regarding the merits of BCG indicate that the credentials and qualifications of BCG's recruiters or former recruiters, and thus the press release profiling Kinney, are issues that could affect large numbers of people beyond the direct participants and involve a topic of widespread, public interest. (*Cross, supra,* 197 Cal.App.4th at p. 373.)

We turn to the second prong, which is whether respondents carried their burden of showing a probability of prevailing on the merits on their causes of action for appropriation of name or likeness (Civ. Code, § 3344), common law misappropriation of name and likeness, unjust enrichment, unfair competition (Bus. & Prof. Code, § 17200), and intentional interference with prospective economic relations. (*Bently Reserve LP v. Papaliolios* (2013) 218 Cal.App.4th 418, 425.) Our review is de novo. (*Ibid.*) We agree with appellants that respondents cannot meet their burden because their suit is untimely.

A two-year statute of limitations applies to claims based on appropriation of name or likeness. (§§ 335.1, 339; Wiseman & Reese, Cal. Practice Guide: Civil Procedure Before Trial Claims & Defenses (The Rutter Group 2013) ¶¶ 4:1430, 4:1520; *Christoff v. Nestle USA, Inc.* (2009) 47 Cal.4th 468, 474, 476, fn. 7 (*Christoff*); *Yeager v. Bowlin* (9th Cir. 2012) 693 F.3d 1076, 1081.) The press release on which respondents' claims are based was first posted in May 2002. Assuming that BCG's use of his likeness was not inappropriate while Kinney was employed by BCG, any cause of action based on the appropriation of Kinney's name or likeness would have accrued at the time he was terminated from BCG in 2004. (See *NBCUniversal Media, LLC v. Superior Court* (2014) 225 Cal.App.4th 1222, 1231 (*NBCUniversal*) ["Generally, the limitations period starts running

13

when the last element of a cause of action is complete."].)  Kinney did not file suit until July 2012.

"'Under the single-publication rule, with respect to the statute of limitations, publication generally is said to occur on the "first general distribution of the publication to the public." [Citations.]'"[4] (*Traditional Cat Assn., Inc. v. Gilbreath* (2004) 118 Cal.App.4th 392, 401.)  "The single publication rule applies to Internet publication regardless of how many people actually see it.  [Citation.]"  (*Cole*, *supra*, 206 Cal.App.4th at p. 1121, fn. 8.)  "The single-publication rule is intended to prevent a 'single integrated publication' from resulting in numerous causes of action because the publication is received by a mass audience.  [Citation.]" (*Christoff*, *supra*, 47 Cal.4th at pp. 480-481.)

Respondents attempt to avoid the single publication rule by arguing that BCG modified the article and republished it at a later date.  However, besides the removal of the "May 2002" date in the later article, the record indicates that the articles are completely identical.  In addition, the record indicates that Kinney's profile was not republished but was merely moved to a section of the website entitled "Article Archives," which allows the reader "to search all of the articles that are no longer published on the main site."  We conclude that removing the date and moving the profile to the archives section of BCG's website was not sufficient to constitute a republication of the article.

---

[4]     The single publication rule is codified in Civil Code section 3425.3 and provides in part:  "No person shall have more than one cause of action for damages for libel or slander or invasion of privacy or any other tort founded upon any single publication."  "[U]nder the single-publication rule 'any single integrated publication, such as one edition of a newspaper or magazine, or one broadcast, is treated as a unit, giving rise to only one cause of action.'  [Citation.]"  (*Christoff*, *supra*, 47 Cal.4th at pp. 478-479.)

"Courts have grappled with what degree of affirmative act constitutes a republication. [Citations.]" (*Pippen v. NBCUniversal Media, LLC* (7th Cir. 2013) 734 F.3d 610, 616 (*Pippen*).) We find *Canatella v. Van de Kamp* (9th Cir. 2007) 486 F.3d 1128 (*Canatella*) to be analogous. In that case, an attorney sued, inter alia, the State Bar of California after his disciplinary record appeared not only in an electronic version of the *California Bar Journal*, but also in response to a member search for his name. He was aware of the publication of the disciplinary summary in the *California Bar Journal* in 2000, but the disciplinary summary on his member search page did not appear until 2003. As relevant here, the plaintiff sought to avoid the application of the single publication rule by arguing that adding his disciplinary summary to his member search page constituted a separate publication. The court disagreed, stating that posting his disciplinary record in a different section of the same website did not give rise to a new cause of action and that the statute of limitations accordingly had expired long before he brought suit. (*Id.* at p. 1135.)

The Ninth Circuit relied on *Canatella* in *Yeager* to reject the plaintiff's argument that a website was republished, and the statute of limitations restarted, each time content was added or revised on the website, even if it did not reference the plaintiff. (*Yeager*, *supra*, 693 F.3d at p. 1082.) The court concluded that, "under California law, a statement on a website is not republished unless the statement itself is substantively altered or added to, or the website is directed to a new audience." (*Ibid.*; see also *Oja v. U.S. Army Corps of Engineers* (9th Cir. 2006) 440 F.3d 1122, 1132 ["The actual posting or publishing of information onto a website requires only a single, discrete act, and no additional action by the host is necessary before the information may be accessed by the general public."]; accord *Pippen*, *supra*, 734 F.3d at p. 616 [the passive maintenance of a website is not a

15

republication]; *Churchill v. State* (2005) 378 N.J.Super. 471, 483, 876 A.2d 311 [updates to a website that do not alter the substance of the initial report not a republication]; *Atkinson v. McLaughlin* (D.N.D.2006) 462 F.Supp.2d 1038, 1055 [modification that did not amount to a substantive change to a website did not constitute a republication].)

As in *Canatella*, Kinney's profile was merely moved to a different section of BCG's website. The statement was not "substantively altered or added to." (*Yeager*, *supra*, 693 F.3d at p. 1082.) We thus conclude that the movement of the press release to the archive section of BCG's website did not constitute a republication for statute of limitations purposes.[5] The statute of limitations accordingly accrued when BCG terminated Kinney's employment in 2004.

Nor can Kinney rely on the discovery rule for delayed accrual of his cause of action. If he was unaware that the press release remained on BCG's website after his termination, he has the burden of demonstrating """"the inability to have made earlier discovery despite reasonable diligence."'" [Citations.]" (*NBCUniversal*, *supra*, 225 Cal.App.4th at p. 1232.) "[T]he discovery rule does not operate to delay accrual of a cause of action 'beyond the point at which their [*sic*]factual basis became accessible to plaintiff to the same degree as it was accessible to every other member of the public.' [Citations.]" (*Id.* at p. 1234.) Because, as Kinney himself argues, a simple internet search brings up his BCG profile, he has not demonstrated an inability to discover the profile earlier despite reasonable diligence.[6]

---

[5] Even if it did constitute a republication, Kinney does not assert that the article was moved in 2012, only that he discovered the movement in 2012. As discussed above, Kinney cannot rely on the discovery rule to delay accrual of his cause of action.

[6] Moreover, in a June 13, 2012 email to Barnes, Kinney wrote, "Your bcgsearch.com website has my name on it in several places and in fact still has an article claiming I am your 'man in Texas.' I asked you to remove these references to me years

Because all of respondents' appropriation-related causes of action are based on the publication of the profile on BCG's website, they all are barred by the statute of limitations. (See *Shively v. Bozanich* (2003) 31 Cal.4th 1230, 1251 [all causes of action based on publication of allegedly defamatory material barred by statute of limitations under the single publication rule]; *Long v. Walt Disney Co.* (2004) 116 Cal.App.4th 868, 870, 874-875 [all causes of action based on alleged appropriation of likenesses barred by statute of limitations].) Respondents are unable to show a probability of prevailing on the merits because their appropriation causes of action are untimely. We therefore conclude that the trial court erred in denying appellants' anti-SLAPP motion on these five causes of action.

*Respondents' Cross-Appeal From the Grant of the Anti-SLAPP Motion as to the Malicious Prosecution Cause of Action*

Respondents contend that the trial court erred in granting appellants' anti-SLAPP motion as to the malicious prosecution cause of action because respondents established a probability of prevailing on the cause of action. There is no dispute that appellants' conduct in filing the libel suit comes within the purview of section 425.16. "We review the trial court's ruling de novo, and apply our independent judgment to determine whether [respondents have] shown a probability of prevailing on [their] claim of malicious prosecution. [Citation.]" (*Mendoza v. Wichmann* (2011) 194 Cal.App.4th 1430, 1447 (*Mendoza*).) We conclude that the trial court correctly granted appellants' anti-SLAPP motion as to the malicious prosecution cause of action.

---

ago and you still have not done so. I insist that you remove every reference to my name and likeness from your websites immediately." Kinney's email thus indicates that Kinney was aware that his profile remained on BCG's website "years" before June 2012.

""""Malicious prosecution is a disfavored action. [Citations.] This is due to the principles that favor open access to the courts for the redress of grievances."" [Citation.] . . . Three elements must be pleaded and proved to establish the tort of malicious prosecution: (1) A lawsuit was """"commenced by or at the direction of the defendant [which] was pursued to a legal termination in . . . plaintiff's . . . favor""""; (2) the prior lawsuit """"was brought without probable cause""""; and (3) the prior lawsuit """"was initiated with malice."""" [Citation.]" (*Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 216.)

"To determine 'whether there was a favorable termination,' we 'look at the judgment as a whole in the prior action . . . .' [Citation.] . . . 'In order for the termination of a lawsuit to be considered favorable to the malicious prosecution plaintiff, the termination must reflect the merits of the action and the plaintiff's innocence of the misconduct alleged in the lawsuit.' [Citation.] . . . [¶] However, a '"favorable"' termination does not occur merely because a party complained against has prevailed in an underlying action. . . . If the termination does not relate to the merits—reflecting on neither innocence of nor responsibility for the alleged misconduct—the termination is not favorable in the sense it would support a subsequent action for malicious prosecution.' [Citation.] Thus, a 'technical or procedural [termination] as distinguished from a substantive termination' is not favorable for purposes of a malicious prosecution claim. [Citation.] Examples include dismissals (1) on statute of limitations grounds . . . ." (*Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 341-342 (*Casa Herrera*).)

The trial court relied on *Casa Herrera, supra,* 32 Cal.4th at page 341 to conclude that respondents could not establish a probability of prevailing on the merits because the underlying libel suit was dismissed on statute of limitations grounds. Respondents contend that the underlying suit was resolved not only on

18

the basis of the statute of limitations, but also on the basis that Kinney's statements on www.ripoffreport.com were privileged pursuant to Civil Code section 47, subdivision (c). They argue that the lawsuit accordingly was terminated on the merits. We agree. Nonetheless, we further conclude that respondents are unable to establish that the underlying suit was brought without probable cause and accordingly cannot show a probability of prevailing on their malicious prosecution claim.

In appellants' underlying defamation lawsuit, the trial court relied on the statute of limitations in granting respondents' anti-SLAPP motion. However, the court subsequently stated that, "[i]n addition to being time barred, [respondents] have presented evidence that there was already a good deal of on-line discussion regarding [appellants'] businesses." The court accordingly concluded that "Kinney's statements of opinion are privileged communications [among] interested parties," citing Civil Code section 47, subdivision (c). After ruling on respondents' anti-SLAPP motion, the trial court granted respondents' motion for judgment on the pleadings as to BCG, the sole remaining plaintiff. (See *BCG I*, *supra*, B223326, 2011 WL 2936773, at *2.) The appellate court affirmed the grant of judgment on the pleadings solely on statute of limitations grounds. (*Id.* at pp. *3-*5.) The appellate court's decision does not constitute a termination on the merits. (*Casa Herrera*, *supra*, 32 Cal.4th at p. 342.)

However, a termination is on the merits where a case has been dismissed because the underlying conduct is privileged under Civil Code section 47. (*Berman v. RCA Auto Corp.* (1986) 177 Cal.App.3d 321, 325; see also *Casa Herrera*, *supra*, 32 Cal.4th at p. 347 [relying on *Berman* to hold that a termination based on the parol evidence rule is on the merits, stating that "the 'Legislature has in effect said that suits based on privileged statements are suits which are without

19

merit.' [Citation.]"].)  As stated above, the trial court did cite Civil Code section 47, subdivision (c) as an alternate reason for concluding that appellants were not able to establish a probability of prevailing on the merits of their defamation lawsuit.  The trial court's reliance on Civil Code section 47 thus constitutes a termination, at least partially on the merits.

Although the appellate court relied solely on statute of limitations grounds in affirming the judgment in the libel lawsuit, the trial court's determination of the merits of appellants' claims is sufficient to establish a favorable termination for purposes of a malicious prosecution action.  (See *Padres L.P. v. Henderson* (2003) 114 Cal.App.4th 495, 515 (*Padres*).)  This is because "a favorable termination exists when the decision relied upon 'reflects "the opinion of someone, either the trial court or the prosecuting party, that the action lacked merit or if pursued would result in a decision in favor of the defendant."'  [Citation.]"  (*Ibid.*)

Similar to the instant case, the underlying action in *Padres* was resolved on the merits in the trial court, but was resolved on appeal on procedural grounds without addressing the merits of the action.  In the subsequent malicious prosecution action, the appellate court held that a trial court's substantive ruling is sufficient to constitute a favorable termination for purposes of malicious prosecution unless the substantive determination is later rejected by an appellate court.  (*Padres*, *supra*, 114 Cal.App.4th at p. 515.)  The appellate court did not reject the trial court's reliance on Civil Code section 47 when it affirmed the judgment.  (See *BCG I*, *supra*, B223326, 2011 WL 2936773.)  Pursuant to *Padres*, therefore, the trial court's reliance on Civil Code section 47 constitutes a favorable termination on the merits of appellants' libel lawsuit.

We therefore proceed to consider whether respondents have established that the libel suit was brought without probable cause.  (*Casa Herrera*, *supra*, 32

20

Cal.4th at p. 341; see *Padres*, *supra*, 114 Cal.App.4th at p. 517 ["'Favorable termination of the suit often establishes lack of merit, yet the plaintiff in a malicious prosecution action must separately show lack of probable cause.'"].) We conclude that respondents have not established that appellants' lawsuit was brought without probable cause.

"Probable cause is a low threshold designed to protect a litigant's right to assert arguable legal claims even if the claims are extremely unlikely to succeed. '[T]he standard of probable cause to bring a civil suit [is] equivalent to that for determining the frivolousness of an appeal [citation], i.e., probable cause exists if "any reasonable attorney would have thought the claim tenable." [Citation.] This rather lenient standard for bringing a civil action reflects "the important public policy of avoiding the chilling of novel or debatable legal claims." [Citation.] Attorneys and litigants . . . "'have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win. . . .'" [Citation.] Only those actions that "'any reasonable attorney would agree [are] totally and completely without merit'" may form the basis for a malicious prosecution suit. [Citation.]' [Citation.]" (*Plumley v. Mockett* (2008) 164 Cal.App.4th 1031, 1047-1048.) "'A litigant will lack probable cause for his action either if he relies upon facts which he has no reasonable cause to believe to be true, or if he seeks recovery upon a legal theory which is untenable under the facts known to him.' [Citation.]" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292.)

"To make a prima facie case of a lack of probable cause in response to the anti-SLAPP motion, [respondents] must submit substantial evidence showing no reasonable attorney would have thought the defamation action was tenable in light of the facts known to [appellants] [citations], or that [appellants] continued pursuing the lawsuit after they had discovered the action lacked probable cause.

21

[Citation.]" (*Mendoza*, *supra*, 194 Cal.App.4th at p. 1449.) In support of its argument that the defamation lawsuit was brought without probable cause, respondents argue that appellants knew the claims were time-barred when the complaint was amended. However, the lawsuit was filed within months of Kinney's post on www.ripoffreport.com, albeit against unknown Doe defendants because Kinney concealed his identity in the post. The record indicates that Barnes eventually obtained a subpoena to determine "Albert's" identity. Although the appellate court ultimately rejected appellants' equitable tolling arguments regarding the statute of limitations, this record does not indicate that the libel suit was """"totally and completely without merit"" . . . . [Citation.]" (*Padres*, *supra*, 114 Cal.App.4th at p. 517.)

The trial court decision and the appellate court decision indicate that the question of whether the statute of limitations applied and whether appellants were entitled to equitable tolling were not frivolous arguments. Under these circumstances, the evidence does not show that no reasonable attorney would have thought the defamation action was tenable. (*Mendoza*, *supra*, 194 Cal.App.4th at p. 1449.)

Respondents further argue that the defamation suit was brought without probable cause because appellants were aware that Kinney's post on www.ripoffreport.com was true. This argument is untenable. Kinney's post stated, inter alia, that Barnes was a "scum bag" who is "pathologically incapable of telling the truth about almost anything. He is a master at shading the truth." Kinney accused Barnes of "cooking the books" and of receiving "negative references from most people who have known him throughout his life." Kinney further accused BCG's recruiters of not doing "much recruiting" and warned readers not to believe "a SINGLE THING you read on [Law Crossing's] website."

22

Appellants scarcely can be held to acknowledge that such statements are true and that their libel suit therefore was filed without probable cause.[7]

Because respondents have failed to make a prima facie case that appellants lacked probable cause to file the libel action, respondents cannot establish an element of their malicious prosecution claim. Respondents thus have failed to establish a probability of prevailing on the merits of their malicious prosecution action. (See *Mendoza*, *supra*, 194 Cal.App.4th at p. 1452.) The trial court accordingly did not err in granting appellants' anti-SLAPP motion as to the malicious prosecution cause of action.

*Appeal of Amount of Attorney Fee Award*

Appellants contend that the trial court abused its discretion in awarding them only $2,500 in attorney fees, rather than the $36,100 in fees that they sought. The trial court decided to award "de minimis" attorney fees, reasoning that appellants had prevailed in their anti-SLAPP motion on only one cause of action. The court further reasoned that Barnes was not entitled to recover fees for work that he did himself and that appellants prevailed on a ground that was not raised in their motion.

An award of attorney fees to a defendant who prevails on an anti-SLAPP motion is mandatory. (*Raining Data Corp. v. Barrenechea* (2009) 175 Cal.App.4th 1363, 1375.) "An appellate court reviews the amount of mandatory attorney fees awarded by the trial court to a defendant who successfully brings an anti-SLAPP motion for abuse of discretion. [Citation.]" (*Paulus v. Bob Lynch*

---

[7]     Appellants' libel complaint cited the same comments cited above and described them as false and defamatory. Moreover, Barnes' affidavit filed in one of the Texas lawsuits repeatedly described Kinney's post as containing "false and disparaging" statements about appellants.

*Ford, Inc.* (2006) 139 Cal.App.4th 659, 686.) In light of our conclusion that appellants' anti-SLAPP motion should have been granted as to respondents' appropriation causes of action, we reverse the attorney fee award and remand for reconsideration by the trial court.

## DISPOSITION

We affirm the trial court's grant of appellants' anti-SLAPP motion as to the malicious prosecution cause of action. We reverse the trial court's denial of appellants' anti-SLAPP motion as to the five causes of action related to the press release. The matter is remanded, and the trial court is directed to enter a new order granting the motion in full and to reconsider the attorney fee award. Appellants shall recover costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.


We concur:



EPSTEIN, P. J.                MANELLA, J.